## STATE OF CONNECTICUT v. TYRONE CAROLINA (13885)

Dupont, C. J., and O'Connell and Landau, Js.

---

Argued December 6, 1995—decision released March 26, 1996

*Michael K. Courtney*, assistant public defender, with whom, on the brief, was *William Silk*, certified legal intern, for the appellant (defendant).

*Leon F. Dalbec, Jr.*, assistant state's attorney, with whom, on the brief, were *Walter D. Flanagan*, state's attorney, and *David Holzbach*, assistant state's attorney, for the appellee (state).

O'CONNELL, J. The defendant appeals from the judgment of conviction, following a jury trial, of possession of a narcotic substance in violation of General Statutes § 21a-279 (a). The defendant was also convicted of disregarding the signal of a police officer in violation of General Statutes § 14-223 (b), but does not challenge the conviction of that charge.

The defendant claims that the trial court improperly (1) ruled that the defendant's custodial arrest was lawful, (2) ruled that the warrantless search of the defendant's vehicle was lawful, and (3) determined that the defendant's constitutional right to a jury selected from

a fair cross section of the community was not infringed. We affirm the judgment of the trial court.

The jury could reasonably have found the following facts. In early May, 1993, Brian Murphy of the Danbury police observed the defendant in the driver's seat of a parked Ford Escort. Murphy approached the vehicle and found the defendant and a passenger sleeping in the car. Because the defendant did not have a valid operator's license, Murphy warned him not to operate the vehicle.

While on patrol on June 3, 1993, Murphy recognized the defendant operating the same Ford Escort. After issuing the defendant a summons for operating a motor vehicle without a license, Murphy made arrangements for the car to be towed and the defendant walked home.

On June 4, 1993, Murphy again observed the defendant operating the Ford Escort in Danbury. Murphy pursued the defendant, who led him on a brief chase. The defendant then stopped his car and began to walk away. Murphy arrested the defendant, handcuffed him, patted him down, and placed him in the backseat of the patrol car.

The defendant was arrested at the scene for operating a motor vehicle without a license in violation of General Statutes § 14-36a[1] and failure to obey the signal of a police officer in violation of § 14-223 (b). Each statute authorizes a fine for a first offense; neither provides for incarceration for a first offense.

While the defendant remained at the scene, Murphy searched his car. Under the driver's seat, Murphy found a clear plastic bag containing four white paper folds. The items were seized and sent to the state toxicology

---

[1] The state did not prosecute the charge of operating a motor vehicle without a license.

laboratory for testing. The contents of the folds tested positive for cocaine.

I

In his first claim, the defendant argues that a full custodial arrest of a Connecticut resident is prohibited by article first, §§ 7 and 9, of the Connecticut constitution[2] when the offense for which the resident is arrested is punishable by only a fine.

The fallacy in the defendant's argument is that neither § 7 nor § 9 of article first of the Connecticut constitution specifically prohibits custodial arrests for offenses punishable solely by a fine. In Connecticut, the decision of a police officer, who has arrested a person for a motor vehicle offense, either to release the person on his own recognizance or to take that person into custody is governed by statute. General Statutes § 14-140 (a) provides in pertinent part: "Any person who has been arrested by an officer for a violation of any provision of any statute relating to motor vehicles *may be released,* upon his own recognizance, *by such officer in his discretion,* unless such violation is of a provision relating to driving while intoxicated or under the influence of drugs or using a motor vehicle without permission of the owner or evading responsibility for personal injury or property damage or involves the death or serious injury of another, in which cases such person shall not be released on his own recognizance." (Emphasis added.)

Thus, the statute requires an officer to take the offender into custody if he is charged with certain

---

[2] Article first, § 7, of the Connecticut constitution provides: "The people shall be secure in their persons, houses, papers and possessions from unreasonable searches or seizures; and no warrant to search any place, or to seize any person or things, shall issue without describing them as nearly as may be, nor without probable cause supported by oath or affirmation."

Article first, § 9, of the Connecticut constitution provides: "No person

offenses not relevant here. Under all other circumstances, § 14-140 (a) confers on the arresting officer the discretion either to release the offender or to take him into custody. Section 14-140 (a) presumes custody and then permits the officer, in his discretion, to release the offender.

In order to prevail on his state constitutional claim, the defendant must demonstrate that § 14-140 (a) is unconstitutional. It is axiomatic that every statute is presumed to be constitutional. *Eielson* v. *Parker*, 179 Conn. 552, 557, 427 A.2d 814 (1980). A defendant challenging the constitutionality of a statute bears the heavy burden of establishing the statute's invalidity beyond a reasonable doubt. *Adams* v. *Rubinow*, 157 Conn. 150, 152–53, 251 A.2d 49 (1968). The defendant has failed to analyze § 14-140 (a) in his brief or at oral argument. He has therefore not sustained his burden of establishing that § 14-140 (a) is unconstitutional.

The defendant also relies on our rules of practice to support his argument that his custodial arrest was prohibited.[3] We are not persuaded. The rule of practice is consistent with § 14-140 (a). At the time of the offense, Practice Book § 1004 (a) expressly provided that "a resident of the state of Connecticut . . . shall be issued a summons and complaint, and may, *in the discretion of the law enforcement officer*, be released without bail on his promise to appear." (Emphasis added.) Prior to 1983, this section required the release of a Connecticut resident. In 1983, however, the language mandating release was deleted, and the emphasized discretionary language was substituted in its place.

shall be arrested, detained or punished, except in cases clearly warranted by law."

[3] Although we discuss the defendant's argument, we do not suggest that a rule of practice can deprive a police officer of discretion conferred on him by statute.

On June 4, 1993, when the defendant committed the traffic offense at issue, the relevant part of § 1004 (b) provided that a Connecticut resident "who is charged with an infraction or with a traffic offense which is payable by mail pursuant to statute shall not be taken into custody, but shall be issued a summons and complaint . . . ."[4]

Because disregarding the signal of a police officer under § 14-223 (b) is not defined as an infraction[5] and is not among the offenses payable by mail, the defendant was not required to be released under § 1004 (b) of the Practice Book. Because we have concluded that the defendant was properly taken into custody for disregarding the signal of a police officer, it is irrelevant that the defendant was also issued a summons for the infraction of operating a motor vehicle without a license.

II

The defendant next claims that even if his custodial arrest was not prohibited under §§ 7 and 9 of the Connecticut constitution, the search of the passenger compartment of his vehicle was improper under *State* v. *Dukes*, 209 Conn. 98, 547 A.2d 10 (1988).[6]

Our Supreme Court has reviewed Connecticut law regarding the warrantless search of an automobile stopped in a public area conducted after the driver has been arrested, handcuffed, and placed in a patrol car. *State* v. *Waller*, 223 Conn. 283, 612 A.2d 1189 (1992);

---

[4] We note that Practice Book § 1004 (b) was further amended effective January 1, 1994. These amendments are not applicable to this case.

[5] For an offense to be considered an infraction, it must be defined as such in the statute describing the offense. General Statutes § 53a-27.

[6] *Dukes*, however, does not support the defendant's contention because the court specifically declined to "decide what authority [an] officer would have had under our constitution to search the vehicle . . . when the only provocation for [the stop] was a traffic violation." *State* v. *Dukes*, supra, 209 Conn. 125.

*State* v. *Delossantos*, 211 Conn. 258, 559 A.2d 164, cert. denied, 493 U.S. 866, 110 S. Ct. 188, 107 L. Ed. 2d 142 (1989). In *Delossantos* and *Waller*, the court recognized that the state constitution permits law enforcement personnel to conduct a warrantless search when a defendant is restrained as a result of a lawful custodial arrest and when the defendant remains at the scene. Specifically, "when police make a lawful custodial arrest of an occupant of an automobile, and the arrestee is detained at the scene, police may contemporaneously search without a warrant the interior passenger compartment of the automobile." *State* v. *Delossantos*, supra, 266–67.

The defendant argues that *Delossantos* and *Waller* do not apply to searches conducted pursuant to a custodial arrest for a violation of Connecticut's traffic laws. Those cases, however, do not rely on the reason for the custodial arrest of a motor vehicle occupant. All they require is that a lawful custodial arrest shall have taken place and that the defendant remain at the scene while the search is conducted.

In the present case, the police made a lawful custodial arrest of the defendant and the defendant was detained at the scene while the search was conducted. The search of the defendant's passenger compartment was justified as incident to a custodial arrest under the Connecticut constitution.

### III

The defendant finally claims that his constitutional right to have a jury selected from a fair cross section of the community was infringed because venirepersons were selected from the Danbury judicial district rather than from Fairfield county as a whole.[7]

---

[7] The defendant makes his claim under the sixth and fourteenth amendments to the United States constitution and article first, § 8, of the Connecticut constitution. The defendant, however, has failed to support his appellate

For a defendant successfully to challenge the composition of his jury array, the defendant must prove "(1) that the group alleged to be excluded is a 'distinctive' group in the community; (2) that the representation of this group in venires from which juries are selected is not fair and reasonable in relation to the number of such persons in the *community*; and (3) that this underrepresentation is due to systematic exclusion of the group in the jury-selection process." (Emphasis added.) *Duren* v. *Missouri*, 439 U.S. 357, 364, 99 S. Ct. 664, 58 L. Ed. 2d 579 (1979). "Once the defendant has established this prima facie case, the burden then shifts to the state to prove that the selection system resulting in a nonrepresentative array furthers a significant state interest." *State* v. *Castonguay*, 194 Conn. 416, 422, 481 A.2d 56 (1984). At issue in this case is whether the community in the *Duren* test may be defined as the judicial district instead of the county as a whole.

"To a large extent defining the community for purposes of the sixth amendment is an arbitrary decision. See *Taylor* v *Louisiana*, 419 U.S. [522, 537, 95 S. Ct. 692, 42 L. Ed. 2d 690 (1975)]. . . . County lines or federal district lines do not magically determine the parameters of a community. . . . [H]owever . . . because the decision is somewhat arbitrary, it is a decision that should be left when possible to a body authorized to legislate on such matters." *Davis* v. *Warden*, 867 F.2d 1003, 1009 (7th Cir.), cert. denied, 493 U.S. 920, 110 S. Ct. 285, 107 L. Ed. 2d 264 (1989).

In 1977, the Connecticut legislature adopted a unified court system through the creation of twelve judicial districts that replaced counties as the means of establishing venue. General Statutes § 51-344. Over the next

claim with an independent analysis under the Connecticut constitution. We therefore deem that claim to be abandoned. *State* v. *Robinson*, 227 Conn. 711, 721, 631 A.2d 288 (1993).

five years, the legislature amended the provisions relating to the selection of jurors to replace the word "county" with the words "judicial district." See General Statutes §§ 51-219c, 51-220a, 51-222, 51-231, 51-238, 51-344. Through these statutes, the Connecticut legislature has defined the community for purposes of jury selection to be the judicial district instead of the county.

Federal courts, concluding that the sixth amendment does not guarantee a defendant that prospective jurors will be selected from an entire district, have approved the selection of venirepersons from subdivisions of districts. The Second Circuit Court of Appeals, for example, has upheld the constitutionality of juries drawn from subdivisions of districts against challenges that the venire did not match the demographics of the district in its entirety. *United States* v. *Gottfried*, 165 F.2d 360, 364 (2d Cir. 1948). Other federal courts have similarly concluded that the sixth amendment does not encompass the right to have jurors drawn from an entire district. See *Ruthenberg* v. *United States*, 245 U.S. 480, 38 S. Ct. 168, 62 L. Ed. 414 (1918); *United States* v. *Grisham*, 841 F. Sup. 1138, 1145 (N.D. Ala. 1994).

On the basis of federal court precedent, we conclude that there is no constitutional limitation on the legislature's ability to define community as the judicial district for the purposes of jury selection. The defendant has failed to establish a prima facie violation of the second prong of the *Duren* test. Accordingly, we conclude that the defendant's right to have a jury selected from a fair cross-section of the community was not infringed.

The judgment is affirmed.

In this opinion the other judges concurred.