# STATE OF CONNECTICUT *v.* NATHANIEL FAUST
## (15382)

Peters, C. J., and Borden, Berdon, Katz and Palmer, Js.

*Argued April 30—officially released June 25, 1996*

*Michael K. Courtney*, assistant public defender, for the appellant (defendant).

*Christopher T. Godialis*, deputy assistant state's attorney, with whom, on the brief, were *Walter D. Flanagan*, state's attorney, and *Patricia M. Gilbert*, assistant state's attorney, for the appellee (state).

PETERS, C. J. The principal issue in this appeal is the propriety of the trial court's instructions to, and inquiries of, prospective jurors prior to the commencement of individual voir dire. After a jury trial, the defendant, Nathaniel Faust, was convicted of rioting at a correctional institution in violation of General Statutes § 53a-179b.[1] After denying the defendant's motion for judgment of acquittal, the trial court rendered judgment on the jury verdict. The defendant appealed from the judgment of the trial court to the Appellate Court, and we transferred the appeal to this court pursuant to Practice Book § 4023 and General Statutes § 51-199 (c). We affirm the judgment of the trial court.

The jury reasonably could have found the following facts. At all times relevant to this appeal the defendant was an inmate incarcerated at Garner Correctional Institution (Garner). On the evening of April 21, 1993, while the defendant and other inmates were returning to their cells from dinner, an inmate riot occurred at Garner.

---

[1] General Statutes § 53a-179b provides in relevant part: "Rioting at correctional institution: Class B felony. (a) A person is guilty of rioting at a correctional institution when he incites, instigates, organizes, connives at, causes, aids, abets, assists or takes part in any disorder, disturbance, strike, riot or other organized disobedience to the rules and regulations of such institution. . . ."

The jury acquitted the defendant of assault of an employee of the department of correction in violation of General Statutes § 53a-167c.

When the riot began, correctional officer Francis Stack received a report of inmates fighting. While responding to the report, Stack confronted the defendant and several other inmates in a hallway leading to one of the cellblocks. Stack informed the inmates that their presence in the hallway violated prison regulations, and ordered them to leave the area immediately. All the inmates except the defendant complied with Stack's order. When Stack approached the defendant, the defendant pulled out a sock containing a combination lock. The defendant then repeatedly beat the sock against a sally port window while yelling to other inmates, "It's on" and "Kick it off." Within moments of the defendant's outburst, several other correctional officers joined Stack and, together, they subdued the defendant and escorted him from the hallway. Additional facts will be discussed as they become relevant to the issues before us.

On appeal, the defendant claims that the trial court improperly: (1) gave instructions to and asked questions of prospective jurors; (2) denied his challenge to the venire panels from which the jury for his trial had been selected; and (3) instructed the jury in several regards. We are not persuaded by any of these claims.

I

The defendant first claims that the trial court's introductory instructions to, and inquiries of, two venire panels prior to the commencement of individual voir dire impaired his state constitutional and statutory rights to individual voir dire.[2] We disagree.

[2] The constitution of Connecticut, article first, § 19, as amended by article four of the amendments, provides: "The right of trial by jury shall remain inviolate, the number of such jurors, which shall not be less than six, to be established by law; but no person shall, for a capital offense, be tried by a jury of less than twelve jurors without his consent. In all civil and criminal actions tried by a jury, the parties shall have the right to challenge jurors peremptorily, the number of such challenges to be established by law. The right to question each juror individually by counsel shall be inviolate."

The following facts are relevant to this claim. Six jurors and two alternates were selected for the defendant's trial from two separate venire panels.[3] For each venire panel, prior to the commencement of the voir dire examination of individual panel members, the judge, accompanied by counsel for the defendant and counsel for the state, proceeded to the jury assembly room and met the entire panel. The trial court informed the panel that the defendant had been charged with committing criminal offenses, identified those offenses and introduced counsel. After each counsel had made brief statements to the panel, the trial court explained to the panel, in general terms, several fundamental principles of criminal law and instructed the panel on these principles.[4] Additionally, during the trial court's explanation to the first panel of a criminal defendant's constitutional right not to testify at trial, the court remarked

General Statutes § 54-82f provides: "Voir dire examination. In any criminal action tried before a jury, either party shall have the right to examine, personally or by his counsel, each juror outside the presence of other prospective jurors as to his qualifications to sit as a juror in the action, or as to his interest, if any, in the subject matter of the action, or as to his relations with the parties thereto. If the judge before whom the examination is held is of the opinion from the examination that any juror would be unable to render a fair and impartial verdict, the juror shall be excused by the judge from any further service upon the panel, or in the action, as the judge determines. The right of such examination shall not be abridged by requiring questions to be put to any juror in writing and submitted in advance of the commencement of said action."

[3] The first venire panel consisted of forty-three venirepersons, and the second venire panel consisted of thirty-eight venirepersons.

[4] In similar remarks to each of the two venire panels, the trial court stated that jurors must follow the court's instructions on the law and that it is the sole province of the jury to determine the facts; explained that, pursuant to the fifth amendment to the United States constitution, a criminal defendant has a right not to testify at trial; briefly discussed the concept of the presumption of innocence and the state's burden to demonstrate the defendant's guilt beyond a reasonable doubt; instructed that sympathy cannot enter into jury deliberations; and briefly explained the individual voir dire process and instructed panel members to reserve judgment until they heard all the evidence. The defendant does not claim that any of the remarks made by the trial court contained an improper statement of the law.

to panel members that "I'm not trying to change your minds, I'm trying to tell you certain things that won't get [you] disqualified."

Interspersed among its introductory remarks and instructions, the trial court conducted general inquiries of each venire panel into areas of potential bias or incapacity.[5] The general inquiries required only affirmative or negative responses from panel members. The trial court also asked specific, open-ended follow-up questions of those individual panel members whose responses to the court's general inquiries had revealed possible bias or incapacity. The follow-up questions were asked and answered in the presence of the other panel members.

For each venire panel, after the trial court had completed its introductory instructions and preliminary questions, the court reviewed with both counsel the

---

[5] The trial court asked each of the two venire panels whether any panel member: was acquainted with any prospective witnesses, either counsel or members of each counsel's respective office; believed that a person must have committed a crime if that person has been arrested; possessed strong feelings toward law enforcement officers; could not follow the court's instruction that sympathy cannot enter into jury deliberations; or believed that African-Americans are more inclined to commit crimes than white people. The trial court also inquired whether any panel member or anyone with whom a panel member was closely acquainted had been the victim of crime.

In addition, the trial court asked the second venire panel whether any panel member: knew anything about Garner that might influence his or her judgment; had any problems regarding the nature of the offenses with which the defendant had been charged; believed that the defendant must have committed the offenses with which he had been charged solely because he was incarcerated; could not follow the court's instruction that the jury must follow the law as charged by the court, that the jury's role is to determine the facts and to apply the facts to the law, or that jurors must reserve judgment until all the evidence is presented; would believe a statement solely because it is made by a law enforcement officer; believed, for any reason, that he or she could not serve as a juror and reach a fair and impartial verdict based on the evidence presented during trial; or had made plans that could not be postponed until after the estimated completion date of the trial.

responses to questions given by individual panel members. The trial court excused several panel members for cause in light of their responses to the inquiries the court had made. Although the trial court invited the defendant to object before it removed panel members for cause, he made no such objection.[6] The trial court also assured counsel that they retained the right to challenge the remaining panel members for cause during individual voir dire. After the trial court's conference with counsel and the court's removal of several panel members for cause, counsel commenced their individual voir dire examination of the remaining panel members.

"Both the federal and state constitutions guarantee to an accused the right to a public trial by an impartial jury. U.S. Const., amends. VI and XIV; Conn. Const., art. I, § 8. . . . Part of the guarantee of a defendant's right to an impartial jury is an adequate voir dire to identify unqualified jurors." (Citation omitted; internal quotation marks omitted.) *State* v. *Patterson*, 230 Conn. 385, 391, 645 A.2d 535 (1994), on appeal after remand, 236 Conn. 561, 674 A.2d 416 (1996). In Connecticut, "[t]he right to a voir dire examination of each prospective juror in a criminal action is provided by § 54-82f of the General Statutes. [The court has the duty to analyze individual questioning under this section and limit examination to questions relating to (1) juror's qualifications, (2) interest, if any, in the subject matter of the action, and (3) relations with the parties thereto.] This right was established as a constitutional one in

[6] The defendant previously had objected to the trial court's questioning of panel members prior to individual voir dire, and had moved for a mistrial on the ground that the panel members' preexposure to the types of inquiries likely to be repeated by counsel during the individual voir dire process would "allow potential jurors so disposed to prepare answers that may interfere with counsel's ability to determine beliefs, predispositions, emotional response systems and prejudgments." The trial court denied the defendant's motion.

1972 by inclusion in article IV of the amendments to the state constitution of the provision that [t]he right to question each juror individually by counsel shall be inviolate." (Internal quotation marks omitted.) *State* v. *Dahlgren*, 200 Conn. 586, 600, 512 A.2d 906 (1986); see *State* v. *Couture*, 218 Conn. 309, 318, 589 A.2d 343 (1991); *State* v. *Dolphin*, 203 Conn. 506, 511, 525 A.2d 509 (1987). We are persuaded that the trial court's instructions and inquiries during its introductory sessions with each of the two venire panels did not violate the defendant's statutory and constitutional rights to individual voir dire.

## A

We find no impropriety in the preliminary instructions given by the trial court to each venire panel prior to the commencement of the voir dire examination of individual panel members. "Preliminary instructions serve the important function of orienting the jurors to the nature of the trial to come. It is helpful to explain at the very start the nature and scope of the jury's duty, some of the basic ground rules and the issues to be decided." A Collection of Connecticut Selected Jury Instructions—Criminal (3d Ed. 1995) p. 1-1. Such instructions are commonly given and, if properly crafted, do not infringe upon a defendant's constitutional rights. See, e.g., *State* v. *Figueroa*, 235 Conn. 145, 182–85, 665 A.2d 63 (1995); *State* v. *Lewis*, 220 Conn. 602, 614–17, 600 A.2d 1330 (1991); *State* v. *Andrews*, 29 Conn. App. 533, 539–41, 616 A.2d 1148 (1992), cert. denied, 224 Conn. 924, 618 A.2d 531 (1993); *State* v. *Kelly*, 23 Conn. App. 160, 168–70, 580 A.2d 520, cert. denied, 216 Conn. 831, 583 A.2d 130 (1990), cert. denied, 499 U.S. 981, 111 S. Ct. 1635, 113 L. Ed. 2d 731 (1991); cf. *State* v. *Woolcock*, 201 Conn. 605, 622–28, 518 A.2d 1377 (1986) (approving trial court's use of preliminary instructions following jury selection).

Our review of the instructions given to the venire panels discloses that the instructions were legally accurate, substantially comported with model preliminary instructions; see A Collection of Connecticut Selected Jury Instructions—Criminal, supra, pp. 1-2 through 1-11; and were appropriately tailored to assist panel members in performing their duties as jurors. Moreover, the defendant has failed to demonstrate any way in which the instructions adversely affected his ability to conduct an individual voir dire. Accordingly, we reject the defendant's claim of impropriety as to the trial court's introductory instructions.

Although the instructions to the venire panels were themselves proper, the trial court should not have remarked during its instructions to members of the first venire panel that "I'm trying to tell you certain things that won't get [you] disqualified." The trial court should have confined its introductory remarks and instructions to basic legal principles that informed the panel members of their responsibilities and obligations as jurors and that guided them in fulfilling those responsibilities and obligations. We caution trial courts against making any extraneous and unnecessary comment such as that made by the court in this case. We are persuaded, however, that no prejudice to the defendant's constitutional and statutory rights to individual voir dire flowed from the trial court's remark. The remark was made to only the first venire panel, was brief and isolated, and was made in the midst of the trial court's lengthy introduction to that panel. Moreover, the defendant conducted full individual voir dire examination of each of the jurors who was ultimately selected to sit for his trial. Under these circumstances, we cannot conclude that the single remark, in the overall context of the trial court's otherwise exemplary introductory instructions to the first venire panel, prejudiced the defendant's voir dire rights.

## B

We are also persuaded that the questions the trial court asked panel members did not violate the defendant's statutory and constitutional voir dire rights. It is well established that the trial court is vested with broad discretion to determine the extent and form of the voir dire examination. See *Bleau* v. *Ward*, 221 Conn. 331, 340, 603 A.2d 1147 (1992); *State* v. *Dahlgren*, supra, 200 Conn. 601.

The trial court, however, must temper its exercise of discretion over voir dire in order to comport with the goals of the voir dire examination. "The purpose of the voir dire examination is two-fold: first, to provide information upon which the trial court may decide which prospective jurors, if any, should be excused for cause; and second, to provide information to counsel which may aid them in the exercise of their right to peremptory challenge. . . . There are two sets of interests protected by the voir dire: (1) the interests of the parties, namely, the defendant and the state; and (2) the interests of the prospective jurors." (Citations omitted; internal quotation marks omitted.) *State* v. *Patterson*, supra, 230 Conn. 391–92. "[T]he exercise of [the trial court's] discretion will not constitute reversible error unless it has clearly been abused or harmful prejudice appears to have resulted." (Internal quotation marks omitted.) *State* v. *Skipper*, 228 Conn. 610, 625, 637 A.2d 1101 (1994).

A trial court may pose questions to entire venire panels prior to individual voir dire; see *State* v. *Mercer*, 208 Conn. 52, 63–64, 544 A.2d 611 (1988); and may dismiss for cause any panel member whose answers to the court's inquiries reveal bias. See id., 64; see also Practice Book § 847.[7] The trial court's ability to question

---

[7] Practice Book § 847 provides: "[Selection of Jury]—Preliminary Proceedings

"The judicial authority shall cause prospective jurors to be sworn or affirmed in accordance with Gen. Stat., §§ 1-23 and 1-25. The judicial author-

prospective jurors assists the court in its task of excluding from a jury any person about whom it entertains doubts regarding impartiality; see *State* v. *Mercer*, supra, 64; and thus enables the court to fulfill its independent duty of securing a criminal defendant's guarantee of a fair trial by an impartial jury. See *State* v. *Brown*, 235 Conn. 502, 527, 688 A.2d 1288 (1995); *State* v. *Day*, 233 Conn. 813, 843, 661 A.2d 539 (1995). In this case, the trial court's general questions, which merely required an affirmative or negative response from panel members, were pertinent and proper for testing the competency and capacity of panel members to serve as jurors, and were unlikely to plant prejudicial matter in the minds of the panel members. The trial court, therefore, did not abuse its discretion when it posed general questions to the members of each venire panel.

Although the trial court's general inquiries were proper, once individual panel members had indicated the existence of possible bias or incapacity to serve as jurors by their responses to those inquiries, the court should not have proceeded further in the presence of other panel members. Follow-up questions that required elaboration beyond an affirmative or negative response should have been reserved for subsequent individual inquiries. A prospective juror's biased opinions or attitudes, expressed through answers to specific questions in the presence of other members of the venire panel, may taint the impartiality of the other members. See Jurywork: Systematic Techniques (2d Ed. 1989) § 2.11 (1), p. 2-68; see also *Mu'Min* v. *Virginia*, 500 U.S. 415, 425, 111 S. Ct. 1899, 114 L. Ed. 2d 493 (1991); *State* v. *Bible*, 175 Ariz. 549, 570, 858 P.2d 1152

ity shall require counsel to make a preliminary statement as to the names of other counsel with whom he or she is affiliated and other relevant facts, and shall require counsel to disclose the names, and if ordered by the judicial authority, the addresses of all witnesses counsel intends to call at trial. The judicial authority may excuse any prospective juror for cause."

(1993) (en banc), cert. denied, 511 U.S. 1046, 114 S. Ct. 1578, 128 L. Ed. 2d 221 (1994).

In order to decrease the risk of one panel member's bias contaminating an entire venire panel, the preferable procedure would have been for the trial court to note the panel members whose responses to the court's general inquiries indicated possible bias or incapacity, and either to have asked specific follow-up questions outside the hearing of other panel members or to have relied upon the parties to pursue any follow-up questions during individual voir dire. We strongly discourage trial courts from asking such questions of individual panel members in the presence of the entire venire panel. We also caution trial courts to craft all their preliminary inquiries so as to guard against the exposure of prospective jurors to any biases of responding panel members.

Although it would have been preferable, in this case, for the trial court not to have asked follow-up questions in the presence of other panel members, the defendant has failed to establish that the court's conduct prejudiced his ability to conduct individual voir dire. The defendant had ample opportunity to question prospective jurors on prejudice that might have resulted from their exposure to responses to the trial court's preliminary questions. The defendant engaged in individual voir dire with each of the panel members selected to serve as a juror for his trial. During individual voir dire, the trial court did not limit or foreclose in any material respect questions designed to uncover bias or incapacity.[8] Moreover, at the time when the jurors who ultimately convicted the defendant had been selected, the

---

[8] The only explicit restriction placed by the trial court on the defendant's right to conduct individual voir dire was that the defendant could not ask prospective jurors questions regarding their knowledge or ignorance concerning questions of law. See State v. Dahlgren, supra, 200 Conn. 601. The defendant does not challenge the propriety of this restriction.

defendant had not exhausted his peremptory challenges. "Unless all his peremptory challenges have been exercised before the completion of jury selection, it is presumed that no juror was permitted to serve whom the defendant regarded as biased or unsuitable, although he might have preferred others." *State* v. *Vitale*, 190 Conn. 219, 225, 460 A.2d 961 (1983); *State* v. *Mercer*, supra, 208 Conn. 61–62; *State* v. *Miller*, 202 Conn. 463, 480, 522 A.2d 249 (1987). The record does not demonstrate that the jurors' exposure to responses given by panel members to the trial court's preliminary questions affected any of the jurors in such a way as to prevent him or her from judging the defendant fairly and impartially. Accordingly, the defendant cannot succeed on this claim of impropriety.

## II

The defendant next claims that the selection of venirepersons from the Danbury judicial district[9] rather than from Fairfield county violated his constitutional right to have a jury selected from a fair cross section of the community.[10] We disagree.

[9] General Statutes § 51-344 provides in relevant part: "Judicial districts established. For purposes of establishing venue, the superior court shall consist of the following judicial districts . . . (2) The judicial district of Danbury, consisting of the towns of Bethel, Brookfield, Danbury, New Fairfield, Newtown, Redding, Ridgefield and Sherman . . . ."

[10] The sixth amendment to the United States constitution provides in relevant part: "In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed, which district shall have been previously ascertained by law . . . ." This sixth amendment right applies to the states through the due process clause of the fourteenth amendment. See *Duncan* v. *Louisiana*, 391 U.S. 145, 149, 88 S. Ct. 1444, 20 L. Ed. 2d 491 (1968).

The defendant also makes his claim under article first, § 8, of the Connecticut constitution. Because the defendant has failed to provide an independent analysis of his state constitutional claim, we decline to review it. See *State* v. *Wilkes*, 236 Conn. 176, 183 n.9, 671 A.2d 1296 (1996); *State* v. *Francis*, 228 Conn. 118, 122 n.3, 635 A.2d 762 (1993).

"The Sixth Amendment requires that the jury panels be drawn from a source representing a fair cross section of the community in which the defendant is tried. *Taylor* v. *Louisiana*, 419 U.S. 522, 536 [95 S. Ct. 692, 42 L. Ed. 2d 690] (1975) . . . . [T]he Sixth Amendment guarantees the *opportunity* for a representative jury venire, not a representative venire itself. . . . In order to guarantee this right, Connecticut adopted General Statutes (Rev. to 1991) § 51-220a, which requires that venire panels be randomly selected." (Citations omitted; emphasis in original; internal quotation marks omitted.) *State* v. *Ellis*, 232 Conn. 691, 698–99, 657 A.2d 1099 (1995).

The defendant's cross section claim is a narrow one. The defendant does not challenge his venire panels pursuant to *Duren* v. *Missouri*, 439 U.S. 357, 99 S. Ct. 664, 58 L. Ed. 2d 579 (1979).[11] Rather, the defendant claims only that *"[i]f the relevant 'community' for 'fair cross section' purposes under the Duren test . . . is the county in which the prosecution takes place,* then [he] was deprived of that fair cross section because the two arrays of [venirepersons] from which his jury was chosen did not reflect a fair cross section of Fairfield [c]ounty." (Emphasis added.) Our inquiry, therefore, is limited to whether the relevant community for purposes of selecting venire panels is based on counties rather than on judicial districts.

---

[11] Under *Duren* v. *Missouri*, supra, 439 U.S. 364, for a defendant successfully to challenge the composition of his or her jury array, the defendant must prove: "(1) that the group alleged to be excluded is a 'distinctive' group in the community; (2) that the representation of this group in venires from which juries are selected is not fair and reasonable in relation to the number of such persons in the community; and (3) that this underrepresentation is due to systematic exclusion of the group in the jury-selection process." "Once the defendant has established this prima facie case, the burden then shifts to the state to prove that the selection system resulting in a nonrepresentative array furthers a significant state interest." *State* v. *Tillman*, 220 Conn. 487, 492, 600 A.2d 738 (1991), cert. denied, 505 U.S. 1207, 112 S. Ct. 3000, 120 L. Ed. 2d 876 (1992).

The Appellate Court recently addressed a claim similar to the claim raised by the defendant in this appeal. *State* v. *Carolina*, 40 Conn. App. 762, 768–70, 673 A.2d 562 (1996). We agree with the Appellate Court that "[t]o a large extent defining the community for purposes of the sixth amendment is an arbitrary decision. . . . County lines or federal district lines do not magically determine the parameters of a community. . . . [H]owever . . . because the decision is somewhat arbitrary, it is a decision that should be left when possible to a body authorized to legislate on such matters." (Citation omitted; internal quotation marks omitted.) Id., 769, quoting *Davis* v. *Warden*, 867 F.2d 1003, 1009 (7th Cir.), cert. denied, 493 U.S. 920, 110 S. Ct. 285, 107 L. Ed. 2d 264 (1989); see *Williams* v. *Superior Court*, 49 Cal. 3d 736, 744–45, 781 P.2d 537, 263 Cal. Rptr. 503 (1989).

The legislature has determined that the judicial district is the relevant community for purposes of selecting venire panels. "In 1977, the Connecticut legislature adopted a unified court system through the creation of twelve judicial districts that replaced counties as the means of establishing venue. General Statutes § 51-344.[12] Over the next five years, the legislature amended the provisions relating to the selection of jurors to replace the word 'county' with the words 'judicial district.' See General Statutes §§ 51-219c, 51-220a, 51-222, 51-231,[13] 51-238 and 51-344. Through these statutes, the

---

[12] See footnote 9.

[13] General Statutes § 51-231 provides: "Drawing of jurors. Before or during each jury session of the superior court in each judicial district, the clerk or an assistant clerk of the superior court shall publicly, randomly or by rotation, draw the names of as many jurors from the judicial district as are ordered to attend said court by the judges assigned to such jury session, which names shall constitute a single jury panel for criminal and civil sessions at any court location within the judicial district. The clerk or an assistant clerk of the court, upon direction of any judge of said court, may assign any jurors of the panel to attend any courtroom within the judicial district."

Connecticut legislature has defined the community for purposes of jury selection to be the judicial district instead of the county." *State* v. *Carolina*, supra, 40 Conn. App. 769–70.[14]

The defendant does not claim that the legislature either created or has maintained the impaneling statutes for an invidious purpose; see *State* v. *Frazier*, 185 Conn. 211, 218, 440 A.2d 916 (1981), cert. denied, 458 U.S. 1112, 102 S. Ct. 3496, 73 L. Ed. 2d 1375 (1982); or that the statutes in some other way violate his constitutional rights. In the absence of any challenge to the constitutionality of the impaneling statutes, the defendant's attempt to redefine the area that constitutes the relevant community for jury selection purposes must fail.

### III

The defendant also challenges the propriety of the trial court's final instructions to the jury. The defendant contends that portions of the final instructions violated his federal constitutional rights under the sixth amendment[15] and the fourteenth amendment.[16] We are not

---

[14] Although we have sometimes looked to counties rather than to judicial districts in order to determine the relevant community for purposes of selecting venire panels; see *State* v. *McCarthy*, 197 Conn. 247, 252–53, 252 n.7, 496 A.2d 513 (1985); *State* v. *Frazier*, 185 Conn. 211, 217, 440 A.2d 916 (1981), cert. denied, 458 U.S. 1112, 102 S. Ct. 3496, 73 L. Ed. 2d 1375 (1982); more recent decisions have determined the relevant community based on judicial districts, in accordance with the statutory scheme set forth by the legislature. See *State* v. *Couture*, supra, 218 Conn. 316A–17.

[15] See footnote 10.

[16] The fourteenth amendment to the United States constitution provides in relevant part: "No State shall . . . deprive any person of life, liberty or property, without due process of law . . . ."

The defendant also claims that the trial court's final instructions violated his right to due process under article first, § 8, of the Connecticut constitution. Because the defendant has failed to provide an independent analysis of his state constitutional claim, we decline to review it. See *State* v. *Varszegi*, 236 Conn. 266, 269 n.4, 673 A.2d 90 (1996); *State* v. *Williams*, 231 Conn. 235, 245 n.13, 645 A.2d 999 (1994).

persuaded by any of the defendant's claims of instructional impropriety.

## A

The defendant first claims that the trial court improperly instructed the jury on the elements required for a conviction of rioting at a correctional institution under § 53a-179b by removing a necessary element of the offense from the jury's consideration. Although the defendant concedes that he did not preserve this claim at trial, he contends that he is entitled to relief under *State* v. *Golding,* 213 Conn. 233, 567 A.2d 823 (1989).[17] We conclude that any possible error occasioned by the instruction was harmless beyond a reasonable doubt and, therefore, that the defendant's claim fails the fourth prong of *Golding.*

A defendant is constitutionally entitled to have the jury instructed on the essential elements of the crime charged and to be acquitted unless proven guilty of each element beyond a reasonable doubt. *United States* v. *Gaudin,* 515 U.S. 506, 509–10, 115 S. Ct. 2310, 132 L. Ed. 2d 444 (1995); *State* v. *Williamson,* 206 Conn. 685, 708, 539 A.2d 561 (1988); *State* v. *Williams,* 202 Conn. 349, 363, 521 A.2d 150 (1987). Accordingly, a trial court is prohibited from incorporating into its jury instructions evidentiary presumptions that have the effect of relieving the state of its burden of proving every essential element of the crime. *Sandstrom* v. *Montana,* 442

---

[17] To prevail under *Golding,* the defendant must establish all of the following conditions: "(1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation clearly exists and clearly deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt. In the absence of any one of these conditions, the defendant's claim will fail. The appellate tribunal is free, therefore, to respond to the defendant's claim by focusing on whichever condition is most relevant in the particular circumstances." *State* v. *Golding,* supra, 213 Conn. 239–40.

U.S. 510, 520–24, 99 S. Ct. 2450, 61 L. Ed. 2d 39 (1979); *State* v. *Williams*, 199 Conn. 30, 34, 505 A.2d 699 (1986).

To prove a violation of § 53a-179b, one element the state must prove is that the charged offense occurred at a correctional institution. See footnote 1. During the course of its final instructions, the trial court told the jury: "Garner is clearly a correctional institution within the meaning of [§ 53a-179b]. You don't have to waste [any time] on that if you find it occurred at Garner—Garner is a correctional institution."

"In analyzing the defendant's claim, we assume, without deciding, that the challenged instruction constituted a *Sandstrom* violation. [See *Sandstrom* v. *Montana*, supra, 442 U.S. 520–24.] This assumption, however, does not end the inquiry because such an error is harmless if the reviewing court may confidently say, on the whole record, that the constitutional error was harmless beyond a reasonable doubt." (Internal quotation marks omitted.) *State* v. *Tucker*, 226 Conn. 618, 624, 629 A.2d 1067 (1993); see *State* v. *Cerilli*, 222 Conn. 556, 584, 610 A.2d 1130 (1992).[18]

Upon review of the entire record, we are persuaded that the state has satisfied its burden of proving that any impropriety in the trial court's instruction was harmless beyond a reasonable doubt.[19] Abundant evidence adduced at trial established that the conduct that had

---

[18] "We have equated this constitutionally required formulation of the harmless error standard; see *State* v. *Coleman*, 14 Conn. App. 657, 678–81, 544 A.2d 194, cert. denied, 208 Conn. 815, 546 A.2d 283 (1988); with our formulation that an instructional constitutional error is harmless if there is no reasonable possibility that the jury was misled. See *State* v. *Mercer*, [supra, 208 Conn. 73–74]. We perceive no functional difference between the two formulations." *State* v. *Cerilli*, supra, 222 Conn. 584 n.16.

[19] Because we conclude that any possible error occasioned by the trial court's instruction was harmless beyond a reasonable doubt, we need not determine whether the defendant waived his right to challenge the propriety of the instruction. See *State* v. *Cooper*, 38 Conn. App. 661, 669–71, 664 A.2d 773, cert. denied, 235 Conn. 908, 665 A.2d 903 (1995).

formed the basis of the charged violation of § 53a-179b had occurred at a correctional institution. Witnesses for the state testified not only that the charged offense had occurred at a correctional institution, but also that the defendant had been incarcerated at that correctional institution at the relevant time. The defendant has never contested any of this evidence. To the contrary, the defendant himself testified that he had been incarcerated at a correctional institution at the time of the charged offense. The defendant further testified that inmates had rioted at that correctional institution at the time of the charged offense. His defense was limited to a denial of his participation in the riot.

The evidence adduced at trial compels the conclusion beyond a reasonable doubt that, in the absence of the assumed improper instruction, the jury would have concluded that the charged violation of § 53a-179b had occurred at a correctional institution. Accordingly, the defendant has failed to satisfy the fourth prong of *Golding*, and therefore cannot prevail on his claim of harmful instructional error. See *State* v. *Bruno*, 236 Conn. 514, 537, 673 A.2d 1117 (1996); *State* v. *Tucker*, supra, 226 Conn. 624–25.

## B

The defendant next claims that the trial court's instructions on rioting at a correctional institution improperly enlarged the offense with which he had been charged. The defendant first contends that it was improper for the trial court to read to the jury § 53a-179b (a) in its entirety because the information had charged him with violating only a portion of that statute. The defendant also contends that the trial court improperly instructed the jury that it could find him guilty for inciting, instigating or taking part in a strike, conduct

for which he had not been charged. We are unpersuaded by either of these claims.[20]

The following additional facts are relevant to this claim. The information charged the defendant with inciting, instigating or taking part in a disturbance, riot or organized disobedience to the rules and regulations of a correctional institution. During the trial court's final instructions to the jury regarding the count of rioting at a correctional institution, the court read § 53a-179b (a) in its entirety. After the trial court excused the jury, the defendant took an exception to the court's reading of the entire statute. In response to the defendant's exception, the trial court immediately recalled the jury and reinstructed it as follows: "I did read the entire statute to you on riot and the various [ways] it could happen—I think there are seven, eight or nine alternatives. The [i]nformation, of course, alleges [that the defendant] incited—he did incite, instigate, or take part in—*you're limited to those three specific words in terms of the allegations of the complaint on riot. Not aiding, abetting or any of those things, but just simply incite, instigate, or take part in. And if you find that he didn't do those things—[any one] of them—then, obviously, you can't find him guilty on that charge.*" (Emphasis added.) The defendant did not take an exception to the trial court's supplemental instruction,

---

[20] The defendant also claims that the trial court failed to instruct the jury adequately as to the necessity of proof of the "organized disobedience to the rules and regulations" portion of § 53a-179b (a). The defendant, however, concedes that the trial court instructed the jury as to the necessity of proof of organized disobedience under the portion of § 53a-179b with which he had been charged, and he does not challenge the propriety of that instruction. The defendant therefore appears to claim that the trial court improperly failed to repeat its correct instruction throughout its charge to the jury. This claim, however, was not raised at trial, and is devoid of analysis and of citation to any relevant authority. We therefore decline to review it. See *State* v. *Bruno,* supra, 236 Conn. 546 n.22; *State* v. *Prioleau,* 235 Conn. 274, 294, 664 A.2d 743 (1995).

and he does not claim on appeal that the supplemental instruction was in any manner improper.

"It is improper for the trial court to read an entire statute to a jury when the pleadings or the evidence support a violation of only a portion of the statute." *State* v. *Chapman*, 229 Conn. 529, 537, 643 A.2d 1213 (1994); *State* v. *Dinoto*, 229 Conn. 580, 584, 642 A.2d 717 (1994). In this case, the original jury instructions were overly expansive because the information charged the defendant only with inciting, instigating or taking part in a disturbance. The trial court's supplemental instruction, however, cured the court's improper reading of § 53a-179b (a) in its entirety. "The defendant cannot complain of alleged instructional misstatements that are corrected by a timely supplemental instruction. . . . Indeed, a supplemental charge is likely to enjoy special prominence in the minds of the jurors because it is fresher in their minds when they deliberate." (Citations omitted.) *State* v. *Ross*, 230 Conn. 183, 224, 646 A.2d 1318 (1994), cert. denied, 513 U.S. 1165, 115 S. Ct. 1133, 130 L. Ed. 2d 1095 (1995); *State* v. *Bryant*, 233 Conn. 1, 13, 658 A.2d 89 (1995). We therefore reject the defendant's claim based on the trial court's reading of § 53a-179b (a) in its entirety.

We also conclude that the trial court did not enlarge the offense of rioting at a correctional institution to include an uncharged theory that the defendant incited, instigated or took part in a strike. "[T]he standard of review to be applied to the defendant's constitutional claim is whether it is reasonably possible that the jury was misled. . . . In determining whether it was indeed reasonably possible that the jury was misled by the trial court's instructions, the charge to the jury is not to be critically dissected for the purpose of discovering possible inaccuracies of statement, but it is to be considered rather as to its probable effect upon the jury in guiding them to a correct verdict in the case. . . . The

charge is to be read as a whole and individual instructions are not to be judged in artificial isolation from the overall charge. . . . The test to be applied to any part of a charge is whether the charge, considered as a whole, presents the case to the jury so that no injustice will result." (Citations omitted; internal quotation marks omitted.) *State* v. *Prioleau*, 235 Conn. 274, 284, 664 A.2d 743 (1995); *State* v. *Grullon*, 212 Conn. 195, 204, 562 A.2d 481 (1989).

Although the trial court mentioned "strike" in its final instructions, the court referred to the term only when it read § 53a-179b (a) to the jury and when it defined the statutory terms "riot," "disorder" and "strike." The trial court never mentioned "strike" in its explanation to the jury of the essential elements of § 53a-179b that the state had to prove beyond a reasonable doubt. Moreover, the trial court expressly instructed the jury that, in order to convict the defendant, it had to find that the state had proven that he had committed the acts in the manner alleged in the information, which did not charge him with inciting, instigating or taking part in a strike. Reading the jury charge as a whole, we are persuaded that it is not reasonably possible that the jury was misled by the trial court's isolated references to "strike." Accordingly, the defendant's claim must fail.

C

Last, the defendant claims that the trial court impermissibly diluted the state's burden of proving him guilty beyond a reasonable doubt. The defendant contends that the trial court improperly instructed the jury to disregard the standard of reasonable doubt mentioned by defense counsel in his closing argument, and improperly instructed the jury regarding reasonable doubt, the presumption of innocence and the jury's legal duty. We disagree.[21]

---

[21] The defendant briefly alludes to a claim that the trial court's instruction to the jury to disregard defense counsel's remarks concerning reasonable

We find no error in the trial court's instruction to the jury to disregard counsel's remarks concerning the standard of reasonable doubt. It is the sole province of the trial court to instruct the jury on the law that it will apply during its deliberations. Moreover, "[a] trial court has wide discretion to determine the propriety of counsel's argument and may caution the jury to disregard improper remarks in order to contain prejudice. A reviewing court may only disturb the trial court's actions in instances of abuse of this wide discretion." *State* v. *Herring*, 210 Conn. 78, 102, 554 A.2d 686, cert. denied, 492 U.S. 912, 109 S. Ct. 3230, 106 L. Ed. 2d 579 (1989).

In this case, although defense counsel's remarks might have constituted an accurate but abbreviated summary of the reasonable doubt standard,[22] we are persuaded that the trial court did not abuse its discretion when it instructed the jury to disregard the remarks. The instruction was generally worded, neither expressly referring to nor mentioning the defendant or his closing argument,[23] and had been preceded by another instruction to the jury to disregard both parties'

doubt undermined his sixth amendment right to counsel. The defendant, however, provides no analysis to support this claim, and we thus address it only in the context of whether the trial court's conduct improperly diluted the state's burden of proof.

[22] At the conclusion of defense counsel's final argument, he stated: "The [j]udge is going to instruct you on reasonable doubt. The only thing I want to say is unless you're firmly convinced, based on what you've heard, that [the defendant] is guilty of one or both of these counts—you can't find him guilty. If you think he's possibly guilty then, under the law, he's not guilty. If you think he's probably guilty then, under the law, he's not guilty. The burden of proof is stronger than that. You have to be firmly convinced. A subjective state of near certitude not absolute certitude. There's no such thing, but subjective state of near certitude."

[23] The trial court instructed the jury as follows: "Now, you've heard some arguments and terms—certitude, possible doubt, some doubt; disregard that completely. That is an inaccurate statement of the law and you will pay attention to what I tell you about a reasonable doubt—use my definition only and disregard the other characterizations or measures of what it [may be]."

descriptions of the law.[24] Moreover, we have repeatedly stated that attempts to clarify reasonable doubt should be avoided because they often tend to obfuscate that concept. "A criminal defendant is entitled to a clear and unequivocal charge that his guilt must be proven beyond a reasonable doubt. . . . We have recognized that [a]ttempts to explain the term 'reasonable doubt' do not usually result in making it any clearer to the minds of the jury. . . . We have further noted that [j]udicial attempts to clarify the meaning of the phrase 'reasonable doubt' by explanation, elaboration or illustration . . . more often than not tend to confuse or mislead. . . . [W]e find no abuse of discretion in the court instructing the jury to disregard argument by counsel tending to cloud the meaning of so important a concept as reasonable doubt. In so doing, the trial court discharge[s] its duty to give jury instructions that are accurate in law, adapted to the issues and adequate to guide the jury in reaching a correct verdict." (Citations omitted; internal quotation marks omitted.) *State* v. *Butler*, 207 Conn. 619, 636–37, 543 A.2d 270 (1988); see also *State* v. *Figueroa*, supra, 235 Conn. 184; *State* v. *Ryerson*, 201 Conn. 333, 342, 514 A.2d 337 (1986). Under these circumstances, we are unpersuaded that the trial court's instruction constituted an abuse of discretion.[25]

---

[24] The trial court had instructed the jury that "if the law, as I give it to you, differs in any way from the claims made by counsel in their respective summaries to you, you will dismiss from your minds what either counsel or one or both may have said to you about the law which is contrary to what I tell you it is."

[25] We caution that if a trial court instructs a jury to disregard descriptions of legal principles made by defense counsel during closing argument, the court should, as did the court in this case, craft its instruction so as to focus on the statements that the jury should disregard and to eliminate or minimize specific reference to the particular party who made the statements. "The trial court should never assume a position of advocacy, real or apparent, in a case before it, and should avoid any displays of hostility or skepticism toward the defendant's case, or of approbation for the prosecution's." *State* v. *Smith*, 200 Conn. 544, 549, 512 A.2d 884 (1986); *State* v. *Bember*, 183 Conn. 394, 401–402, 439 A.2d 387 (1981).

The defendant's challenge to the portions of the trial court's instructions regarding reasonable doubt, the presumption of innocence and the jury's duty warrants little discussion. The defendant claims that the trial court improperly instructed the jury that the "law is made to protect society and innocent persons not to protect guilty ones" and that it is the "sworn duty of [the] jury to enforce the law . . . ."[26] As the defendant acknowledges, however, we have on several occasions upheld, in the context of the jury charge as a whole, language identical or substantially similar to the challenged language. See, e.g., *State* v. *Cassidy*, 236 Conn. 112, 145, 672 A.2d 899 (1996) ("the law is made to protect society and innocent persons and not to protect guilty ones" [internal quotation marks omitted]); *State* v. *Stanley*, 223 Conn. 674, 695–96, 613 A.2d 788 (1992) (same); *State* v. *Palmer*, 196 Conn. 157, 168, 491 A.2d 1075 (1985) ("it is the sworn duty of the jury to enforce the law which is made for the protection of life, society and property and to render such a verdict as the evidence warrants" [internal quotation marks omitted]). Neither of the challenged instructions, when properly

---

[26] The trial court instructed the jury as follows: "Ladies and gentlemen, the state of Connecticut does [not] desire the conviction of any innocent person or any person whose guilt has not been established beyond a reasonable doubt. The state does not wish to have an innocent person punished nor does it wish to have a guilty person acquitted. But, for the safety and well being of society and the protection of life and property, the state is concerned in securing the conviction of persons who have been proven by the evidence beyond a reasonable doubt to have been guilty of committing an offense or offenses as [may be] charged in the information. *It's a sworn duty of the court and the jury to safeguard the rights of persons charged with offenses respecting the presumption of innocence which the law imputes to every person so charged. But, the law is made to protect society and innocent persons, not to protect guilty ones.*

"*If the presumption of innocence has been overcome or removed by evidence demonstrating guilt beyond a reasonable doubt, then it's the sworn duty of the jury to enforce the law, which, as I told you, made for the protection of life, society, and property and to render such a verdict as the evidence warrants.*" (Emphasis added.)

considered in the broader context of the trial court's instructions in their entirety, diluted the state's burden of proof or otherwise misled the jury in any way.[27] See *State* v. *Cassidy*, supra, 145; *State* v. *Francis*, 228 Conn. 118, 135–36, 635 A.2d 762 (1993); *State* v. *Palmer*, supra, 168–69. The challenged instructions, therefore, were proper.

The judgment is affirmed.

In this opinion BORDEN, KATZ, and PALMER, Js., concurred.

BERDON, J., concurring. I concur in the result. I write separately because of my concerns with regard to the racial and ethnic composition of the community from which the venirepersons were selected. The defendant's trial took place in the city of Danbury and his jury was selected from the judicial district of Danbury rather than from the county of Fairfield, within which Danbury is located.

According to the 1990 census, the towns within the judicial district of Danbury have a total population of 162,584, of which 5040 residents are African-American (3 percent) and 6670 residents are Hispanic (4 percent). The county of Fairfield, however, has a total population of 827,645, of which 81,519 residents are African-American (10 percent) and 70,818 residents are Hispanic (8.5 percent). It is quite obvious that the racial and ethnic composition of the community from which the venirepersons for the defendant's jury were drawn would have been substantially different if the community had

---

[27] We reiterate, however, our suggestion in *State* v. *Francis*, 228 Conn. 118, 136 n.19, 635 A.2d 762 (1993), that "(1) the challenged sentence ['the law is made to protect society and innocent persons, and not to protect guilty ones'] be omitted; or (2) it be modified to provide as follows: 'But the law is made to protect society and persons whose guilt has not been established beyond a reasonable doubt, and not to protect those whose guilt has been so established.' "

consisted of the county of Fairfield instead of the judicial district of Danbury. The county of Fairfield would have provided this African-American defendant, Nathaniel Faust, with more than double the chance of having African-American and/or Hispanic jurors. In this case, no minorities served on the defendant's jury; every juror was white. Indeed, not one African-American or Hispanic individual was even subjected to voir dire during jury selection.

Historically, the county has been the unit from which potential juries were summoned. "From time immemorial in this state, the community unit which is the basis for the source of a jury array is that of a county . . . ." *State* v. *Townsend*, 167 Conn. 539, 551, 356 A.2d 125, cert. denied, 423 U.S. 846, 96 S. Ct. 84, 46 L. Ed. 2d 67 (1975). Even after the legislature substituted the judicial district for the county, this court continued to recognize the county as the appropriate community from which to draw venirepersons. See *State* v. *McCarthy*, 197 Conn. 247, 252 n.7, 496 A.2d 513 (1985).

Although the defendant clearly challenged the drawing of the venirepersons from the judicial district instead of from the county, he effectively withdrew the claim, in a letter addressed to this court, because of the Appellate Court decision in *State* v. *Carolina*, 40 Conn. App. 762, 768–70, 673 A.2d 562 (1996).[1] Accordingly, I would not reach the issue in part II of the majority opinion; rather, I would leave it for another day.

I concur in the judgment.

---

[1] The Appellate Court held: "On the basis of federal court precedent, we conclude that there is no constitutional limitation on the legislature's ability to define community as the judicial district for the purposes of jury selection." *State* v. *Carolina*, supra, 40 Conn. App. 770. I note that the defendant did not challenge the constitutionality, under either the state or federal constitution, of General Statutes §§ 51-219c, 51-220a, 51-222, 51-231, 51-238 or 51-344, with respect to the designation of the judicial district instead of the county for the drawing of the venire.