STATE OF CONNECTICUT *v.* KIM LYONS
(14924)

Dupont, C. J., and Landau and Freedman, Js.

Argued September 25—officially released December 10, 1996

*Maura T. Kehoe,* certified legal intern, with whom were *Richard Emanuel,* assistant public defender, and, on the brief, *Jessica Born,* certified legal intern, for the appellant (defendant).

*Susann E. Gill,* assistant state's attorney, with whom, on the brief, were *Donald A. Browne,* state's attorney, and *Richard Palumbo,* assistant state's attorney, for the appellee (state).

LANDAU, J. The defendant, Kim Lyons, appeals from the judgment of conviction, rendered after a jury trial, of sexual assault in the first degree in violation of General Statutes § 53a-70 (a) (1).[1] On appeal, the defendant claims that the trial court improperly (1) restricted his constitutional rights of confrontation and to present a defense, and (2) admitted "constancy of accusation" evidence. We affirm the judgment of the trial court.

The jury could reasonably have found the following facts. On July 26, 1993, at approximately midnight, S[2] was standing on the corner of East Washington Avenue and William Street in Bridgeport when she was approached by the defendant. The defendant asked S if she wanted to "get busy or trick." S responded no. The defendant then asked her if she "got high." S responded yes and accompanied the defendant to the second floor of an abandoned building. Once inside the abandoned building, the defendant failed to produce the drugs and reiterated his desire to "trick," i.e., to engage in sexual intercourse. S again refused and started to leave when the defendant said they would "smoke." When S returned, the defendant hit her in the face with his fist and then proceeded to punch and bite her all over her body. S screamed for help and tried to escape throughout the attack but was unsuccessful. During the attack, the defendant penetrated S's vagina three times, once with his fingers and twice with his penis. After about one hour of this struggle, S broke free and escaped to the second floor landing, but the

[1] General Statutes § 53a-70 (a) provides in pertinent part: "A person is guilty of sexual assault in the first degree when such person (1) compels another person to engage in sexual intercourse by the use of force against such other person or a third person, or by the threat of the use of force against such other person or against a third person which reasonably causes such person to fear physical injury to such person or a third person . . . ."

[2] In the interest of preserving the privacy of the victim, we refer to her by her first initial.

defendant caught her there and engaged her in a headlock.

Meanwhile, Bridgeport police officer Michael Taylor had been dispatched to the scene on a report of a woman screaming. Some time after Taylor emerged from his patrol car, he heard a woman screaming for help. As he approached the building, he pointed his flashlight up the stairs to the second floor and observed the defendant holding S in a headlock. Taylor drew his gun, identified himself as a police officer, and ordered the defendant to release the victim. He repeated his order two or three times before the defendant released S. Upon being released, S ran down the stairs and Taylor noticed that her nose was bleeding heavily. He also noticed that the defendant was naked from the waist down. Taylor and his backup, Officer Roger Soltis, proceeded up the stairs and placed the defendant under arrest.

The defendant argues that his right to confront and cross-examine the state's witnesses was unduly restricted, that his right to present a defense was violated by the trial court's undue restriction of his direct examination of S when she was called as a defense witness, and that his rights were violated by the prosecutor's numerous objections during defense counsel's closing argument. We address these issues in turn.

I

The defendant first argues that the trial court unduly restricted his right to confront and cross-examine the state's witnesses in violation of his sixth amendment right to confrontation. The trial court precluded the defendant from exploring on cross-examination three general areas of inquiry. These areas were S's drug use and reckless lifestyle, prostitution, and motive and bias.

The federal constitution provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . .

to be confronted with the witnesses against him . . . ." U.S. Const., amend. VI. A primary interest secured by the sixth amendment's confrontation clause is the right of cross-examination. *Davis* v. *Alaska*, 415 U.S. 308, 315, 94 S. Ct. 1105, 39 L. Ed. 2d 347 (1974).

"The confrontation clause does not, however, suspend the rules of evidence to give the defendant the right to engage in unrestricted cross-examination. . . . Only relevant evidence may be elicited through cross-examination. . . ." (Citations omitted; internal quotation marks omitted.) *State* v. *Barnes*, 232 Conn. 740, 746, 657 A.2d 611 (1995). It is well settled that questions of relevance are committed to the sound discretion of the trial court. *State* v. *Weidenhof*, 205 Conn. 262, 277, 533 A.2d 545 (1987). "In determining whether a defendant's right of cross-examination has been unduly restricted, we consider the nature of the excluded inquiry, whether the field of inquiry was adequately covered by other questions that were allowed, and the overall quality of the cross-examination viewed in relation to the issues actually litigated at trial. . . ." (Citations omitted; internal quotation marks omitted.) *State* v. *Santiago*, 224 Conn. 325, 331, 618 A.2d 32 (1992).

Applying the foregoing principles to the present case, we conclude that the trial court did not unduly restrict the defendant's cross-examination of the state's witnesses. We begin by reviewing the defendant's cross-examination of S.

The first area of inquiry precluded by the trial court was S's drug use and reckless lifestyle. On cross-examination, the trial court permitted the defendant to explore S's drug use at great length. The cross-examination focused on S's drug use on the night of the assault, including how she smoked freebase cocaine and its effect upon her, and that she went with the defendant because she wanted to smoke more drugs. The defend-

ant was also permitted to explore S's intent to trade the use of her drug paraphernalia in exchange for freebase cocaine because she did not have any money. Finally, the defendant asked S whether she was under the influence of drugs at the time of her testimony. The trial court precluded the defendant from inquiring into, inter alia, with whom S resided on the day of the offense, who gave her a ride to William Street the night of the offense, how many times she smoked cocaine that day, and how many men she met while at the William Street location that night.[3]

In the area of "prostitution," the trial court permitted the defendant to explore on cross-examination what S was wearing the night of the assault, whether she had ever been to that area before, and whether she had ever met the defendant before that night. The trial court sustained the state's objection to defense counsel's question whether she dressed as she had all the time or only when she went to the William Street area.[4]

---

[3] The following colloquy took place:

"[Defense Counsel]: And who were you residing with at the time of the—on the day in question?

"[Prosecutor]: Objection, Your Honor.

"The Court: Sustained.

\* \* \*

"[Defense Counsel]: And who gave you a ride?

"[S]: A friend of mine.

"[Defense Counsel]: Male or female friend?

"[S]: Male.

"[Prosecutor]: Objection.

"The Court: Sustained.

\* \* \*

"[Defense Counsel]: How many men did you meet while out there in the area of William Street on that night in question?

"[Prosecutor]: Objection.

"The Court: Sustained."

[4] The following colloquy took place:

"[Defense Counsel]: Now, is this the clothing that you typically wore all the time or was this the clothing that you wore only when you went over to the area of William Street?

"[Prosecutor]: Objection.

"The Court: Sustained."

Finally, the defendant sought to impeach S by attempting to elicit evidence of S's bias and motive. The defendant suggested that S reported the sexual assault to explain her whereabouts to her husband. The trial court permitted the defendant to ask S whether she complained to the police about the sexual assault only because she was afraid of what her husband might think. S denied that she was so motivated. The trial court sustained the state's objection to the question whether "this was a perfect opportunity for you to make a complaint that would not only pay back the person who you expected to get drugs from, but explain your whereabouts to your husband."[5]

It is clear from the record that the majority of the state's objections and the trial court's subsequent rulings were based on relevancy.[6] The bases for the remainder of the trial court's rulings are not clear from the record, but the defendant's failure to make an adequate record precludes us from reviewing any nonrelevancy issues. "In determining the admissibility of evidence, [t]he trial court has broad discretion to determine both the relevancy and remoteness of evidence." (Internal quotation marks omitted.) *State* v. *Coleman*, 35 Conn. App. 279, 285, 646 A.2d 213, cert. denied, 231 Conn. 928, 648 A.2d 879 (1994), quoting *Dunham* v. *Dunham*, 204 Conn. 303, 324, 528 A.2d 1123 (1987). "Evidence is admissible when it tends to establish a fact in issue or

[5] The following colloquy took place:

"[Defense Counsel]: And wasn't this a perfect opportunity for you to make a complaint that would not only pay back the person who you expected to get drugs from, but explain your whereabouts to your husband?

"[Prosecutor]: Objection.

"The Court: Sustained."

[6] In his brief, the defendant argues that he was denied the opportunity to make an adequate record with regard to several excluded questions. The basis of the defendant's argument stems from the fact that the trial court ordered that all legal argument, not otherwise requested by the trial court, be conducted while the jury was in recess. The defendant did not avail himself of this opportunity to make a record outside the jury's presence.

to corroborate other direct evidence in the case. One fact is relevant to another fact whenever, according to the common course of events, the existence of the one, taken alone or in connection with other facts, renders the existence of the other either certain or more probable." (Internal quotation marks omitted.) *State* v. *Ulen*, 31 Conn. App. 20, 28, 623 A.2d 70, cert. denied, 226 Conn. 905, 625 A.2d 1378 (1993), quoting *State* v. *Boucino*, 199 Conn. 207, 228, 506 A.2d 125 (1986).

"In determining whether there has been an abuse of discretion, every reasonable presumption should be given in favor of the correctness of the court's ruling. . . . Reversal is required only where an abuse of discretion is manifest or where injustice appears to have been done." (Internal quotation marks omitted.) *State* v. *Coleman*, supra, 35 Conn. App. 285.

The trial court permitted the defendant to conduct an extensive cross-examination of S. The defendant argues that he was precluded from fully exploring S's reliability and credibility. The trial court, however, prohibited only areas of inquiry that, at the time the testimony was elicited, were not relevant. The defendant failed to establish the significance of his lines of inquiry and the relevance of the proffered testimony. The trial court limited the scope of the defendant's cross-examination of S because the defendant had not as yet laid the proper foundation for the three general areas of inquiry.[7]

In reviewing the excluded areas of inquiry and the cross-examination in its entirety, we conclude that the

---

[7] During the defendant's cross-examination of Detective Bruce Belco, the trial court, in response to an attempt by the defendant to inquire into S's alleged drug addiction, stated: "I don't quarrel whatever that you have every right to produce any evidence on that subject, but it would not be proper examination, cross-examination of this witness because at this juncture in the case that subject is irrelevant to what is alleged to have occurred, so understand that to be my ruling. I'm giving you full opportunity to develop it anytime during the course of your case."

trial court did not abuse its discretion by limiting the scope of S's cross-examination. "It is a reasonable exercise of judicial discretion to exclude . . . evidence the relevancy of which appears to be so slight and inconsequential that to admit it would distract attention which should be concentrated on vital issues of the case." *State* v. *Moynahan*, 164 Conn. 560, 589, 325 A.2d 199, cert. denied, 414 U.S. 976, 94 S. Ct. 291, 38 L. Ed. 2d 219 (1973).

Our review of the entire record further reveals that the defendant's claim that his right to cross-examine the balance of the state's witnesses was unduly restricted is equally without merit. See *State* v. *Kelley*, 229 Conn. 557, 563, 643 A.2d 854 (1994); *State* v. *Cooke*, 42 Conn. App. 790, 795–96, 682 A.2d 513 (1996).

II

The defendant next argues that his right to present a defense was violated by the trial court's undue restriction of his direct examination of S when she was called as a defense witness. We disagree.

"In order to comport with the constitutional standards embodied in the confrontation clause, the trial court must allow a defendant to expose to the jury facts from which the jurors, as the sole triers of fact and credibility, could appropriately draw inferences relating to the reliability of the witness. *Davis* v. *Alaska*, [415 U.S. 308, 318, 94 S. Ct. 1105, 39 L. Ed. 2d 347 (1974)] . . . ." (Citations omitted; internal quotation marks omitted.) *State* v. *Barnes*, supra, 232 Conn. 746. It is also undisputed that the accused has an equal right under the compulsory process and due process clauses " 'to present a defense, the right to present the defendant's version of the facts as well as the prosecution's to the jury so that it may decide where the truth lies.' " *Washington* v. *Texas*, 388 U.S. 14, 19, 87 S. Ct. 1920, 18 L. Ed. 2d 1019 (1967); *State* v. *Kelly*, 208 Conn. 365,

375, 545 A.2d 1048 (1988). Thus, "[w]hen defense evidence is excluded, such exclusion may give rise to a claim of denial of the right to present a defense. *Chambers* v. *Mississippi*, [410 U.S. 284, 289–90, 93 S. Ct. 1038, 35 L. Ed. 2d 297 (1973)]." *State* v. *Christiano*, 228 Conn. 456, 474, 637 A.2d 382, cert. denied, 513 U.S. 821, 115 S. Ct. 83, 130 L. Ed. 2d 36 (1994). It is well settled, however, that "[i]n exercising the right to present witnesses in his own defense, the defendant must comply with established rules of procedure and evidence designed to assure both fairness and reliability in the ascertainment of guilt and innocence." (Internal quotation marks omitted.) *Chambers* v. *Mississippi*, supra, 302; *State* v. *Kelly*, supra, 375–76.

In the present case, at the trial court's request, the defendant made an offer of proof as to the areas of inquiry he sought to explore on direct examination of S. Although the trial court ruled that the majority of the defendant's proffered inquiry was irrelevant, it allowed the defendant to call S as a defense witness.

On direct examination, the defendant asked questions similar to those that were disallowed by the trial court on relevancy grounds during the defendant's cross-examination of S. The trial court did permit the defendant to inquire about S's alleged drug habit, the effect that drugs had upon her, and what she was wearing that night. The defendant was also permitted, for purposes of impeachment, to ask S how many times she told the examining doctor she was penetrated by the defendant the night of the assault. S responded that she did not remember. The remaining questions were directed toward impeachment of S and were properly precluded by the trial court. There is no evidence, nor has the defendant proffered any evidence, in support of his contention that the contested areas of inquiry were relevant. We conclude, therefore, that the trial

court did not deprive the defendant of his right to present a defense.[8]

## III

Finally, the defendant argues that his rights to present a defense, to effective assistance of counsel, and to due process of law were violated by the prosecutor's numerous objections during defense counsel's closing argument. We disagree.

During the course of the defendant's closing argument, the prosecutor objected twenty-two times. Five objections were overruled, six objections were explicitly or implicitly sustained and eleven objections were not ruled on.[9] The defendant made three separate motions for a mistrial based on alleged prosecutorial misconduct and each was denied.

Prosecutorial misconduct can occur in the course of closing argument. *State* v. *Couture*, 194 Conn. 530, 564, 482 A.2d 300 (1984), cert. denied, 469 U.S. 1192, 105 S. Ct. 967, 83 L. Ed. 2d 971 (1985). "While the privilege of counsel in addressing the jury should not be too closely narrowed or unduly hampered, it must never be used as a license to state, or to comment upon, or to suggest an inference from, facts not in evidence, or to present matters which the jury have no right to consider." *State*

---

[8] Although the defendant makes his claim under the fourteenth amendment to the United States constitution and article first, § 8, of the Connecticut constitution, he has failed to support his state constitutional claim with an independent analysis. We, therefore, deem that claim to be abandoned. *State* v. *Francis*, 228 Conn. 118, 122 n.3, 635 A.2d 762 (1993); *State* v. *Carolina*, 40 Conn. App. 762, 768–69 n.7, 673 A.2d 562, cert. denied, 237 Conn. 914, 675 A.2d 886 (1996).

[9] The following is an example:

"[Prosecutor]: I would object, Your Honor. He is mischaracterizing the testimony.

"[Defense Counsel]: Your Honor, it's a reasonable inference, that she is willing to go to an area at night and take whatever—went into an area that's known for . . .

"The Court: The jury has heard the case. I'll leave it in their hands."

v. *Ferrone*, 96 Conn. 160, 169, 113 A. 452 (1921). " '[T]he touchstone of due process analysis in cases of alleged prosecutorial misconduct is the fairness of the trial, not the culpability of the prosecutor.' " *Smith* v. *Phillips*, 455 U.S. 209, 219, 102 S. Ct. 940, 71 L. Ed. 2d 78 (1982); *State* v. *Cosgrove*, 186 Conn. 476, 488–89, 442 A.2d 1320 (1982). In order to deprive a defendant of his constitutional right to a fair trial the prosecutor's conduct must have "so infected the trial with unfairness as to make the resulting conviction a denial of due process." (Internal quotation marks omitted.) *State* v. *Williams*, 204 Conn. 523, 539, 529 A.2d 653 (1987).

It is clear from the record that defense counsel, during closing argument, improperly attempted to comment on, or to suggest an inference from, facts not in evidence. *State* v. *Ferrone*, supra, 96 Conn. 168–69.[10] In response to the defense counsel's remarks, the prosecutor promptly objected. The prosecutor's objections, although numerous, were not representative of a blatant and egregious pattern of misconduct that either "deprive[d] the defendant of a fair trial . . . or otherwise implicate[d] the fairness and integrity of and public confidence in the judicial proceedings." (Citation omitted.) *State* v. *Chance*, 236 Conn. 31, 64, 671 A.2d 323 (1996).

The judgment is affirmed.[11]

In this opinion the other judges concurred.

---

[10] While *Ferrone* involved a state's attorney's remarks made during closing argument, the rules apply equally to both the prosecutor and the defense counsel.

[11] In his brief, the defendant contends that the trial court improperly admitted "constancy of accusation" evidence and sought "whatever relief is accorded to the defendant in [*State* v.] *Troupe*, [237 Conn. 284, 677 A.2d 917 (1996)]." At the time the defendant filed his brief, the Supreme Court had not ruled in *Troupe*. *Troupe* was officially released on June 11, 1996, and the Supreme Court explicitly stated that the modification of the rule announced therein applied prospectively to cases in which constancy of accusation testimony had not yet been admitted into evidence. Id., 305. As

a result, *Troupe* does not apply to this case and, thus, the defendant's claim will not be addressed.