## STATE OF CONNECTICUT *v.* TAVARES COSBY
### (14048)

Foti, Schaller and Hennessy, Js.

Argued October 31—officially released December 31, 1996

*John E. Doran,* and *David Griffin,* certified legal interns, with whom was *Richard Emanuel,* assistant public defender, for the appellant (defendant).

*Richard F. Jacobson,* supervisory assistant state's attorney, with whom, on the brief, were *Donald A. Browne,* state's attorney, and *Gerard Eisenman,* assistant state's attorney, for the appellee (state).

FOTI, J. The defendant appeals from the judgment of conviction, rendered after a jury trial, of robbery in the first degree in violation of General Statutes (Rev. to 1995) § 53a-134 (a) (1)[1] and assault in the first degree in violation of General Statutes (Rev. to 1995) § 53a-59 (a) (1).[2] On appeal, the defendant claims that (1) the evidence was insufficient to establish his guilt of the crimes charged, (2) the trial court improperly admitted evidence and (3) the trial court improperly instructed the jury on circumstantial evidence. We affirm the judgment of the trial court.

The jury could reasonably have found the following facts. On February 27, 1993, at approximately 6:20 p.m., the victim, Harold Spain, owner of Harold's Market in Bridgeport, was in his store when he heard someone say "stick up." Two men wearing ski masks had entered the store. One man, carrying a rifle, wore a blue mask, a blue jacket and blue denim pants. The other man was wearing a brown mask and a brown jacket. The second man proceeded to take about $300 from the cash register. The victim was ordered to lie down on the floor, and for approximately twenty minutes the two robbers searched for more money. During the search, they closed the window blinds and locked the door. The

[1] General Statutes (Rev. to 1995) § 53a-134 (a) provides in pertinent part: "A person is guilty of robbery in the first degree when, in the course of the commission of the crime of robbery as defined in section 53a-133 or of immediate flight therefrom, he or another participant in the crime: (1) Causes serious physical injury to any person who is not a participant in the crime . . . ."

[2] General Statutes (Rev. to 1995) § 53a-59 (a) provides in pertinent part: "A person is guilty of assault in the first degree when: (1) With intent to cause serious physical injury to another person, he causes such injury to such person or to a third person by means of a deadly weapon or a dangerous instrument . . . ."

victim was ordered to get up and lock the door. Instead, the victim ran out of the store and was shot in the left thigh.

The victim later identified the man who shot him as Tavares Cosby, the robber dressed in blue who had the rifle. Cosby, who lived in the area, had been a customer but, due to a disagreement, the victim had not allowed the defendant into the market for two or more months. Approximately two hours prior to the robbery, the victim had left the store to go to church. As he drove away, he heard someone across the street say, "I'm going to get ya." There were fifteen to twenty men there and the victim did not see who had said it. He turned his car around and went back to the group and observed the defendant, dressed as he usually was in a blue jacket and blue denims, waving at him. The victim alleged that this was the man who later shot him. The victim had known the defendant for nine or ten years. For several years, the defendant had entered the store three or four times a day. The defendant had a "funny type figure" and "a sort of impediment with his speech." The defendant's posture was distinctive because he did not stand upright. The victim also recognized the defendant's eyes through the ski mask. The victim, therefore, was able to make an in-court identification of the defendant.

I

The defendant claims that the evidence was insufficient to sustain his conviction. " 'When reviewing a sufficiency of the evidence claim, we first examine the evidence in the light most favorable to upholding the jury's verdict. *State* v. *Avis*, 209 Conn. 290, 309, 551 A.2d 26 (1988), cert. denied, 489 U.S. 1097, 109 S. Ct. 1570, 103 L. Ed. 2d 937 (1989); *State* v. *Rice*, 25 Conn. App. 646, 650, 595 A.2d 947 (1991). We then determine on the basis of the facts established and the inferences that reasonably could be drawn from those facts whether the jury reasonably could have concluded that

the cumulative effect of the evidence established the defendant's guilt beyond a reasonable doubt. *State* v. *Famiglietti*, 219 Conn. 605, 609, 595 A.2d 306 (1991); *State* v. *Hopes*, 26 Conn. App. 367, 376, 602 A.2d 23, cert. denied, 221 Conn. 915, 603 A.2d 405 (1992). We note that the probative force of the evidence is not diminished because it consists, in whole or in part, of circumstantial evidence rather than direct evidence. *State* v. *Robinson*, 213 Conn. 243, 254, 567 A.2d 1173 (1989).' *State* v. *Lago*, 28 Conn. App. 9, 30, 611 A.2d 866, cert. denied, 223 Conn. 919, 614 A.2d 826 (1992). Our inquiry into whether the evidence in the record would support a finding of guilt beyond a reasonable doubt does not require us to ask if we believe that the evidence established guilt beyond a reasonable doubt, but rather if '*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' . . . *State* v. *Boykin*, 27 Conn. App. 558, 563–64, 609 A.2d 242, cert. denied, 223 Conn. 905, 610 A.2d 179 (1992). Once a defendant has been found guilty of the crime charged, we conduct our judicial review of all of the evidence in the light most favorable to the prosecution. Id., 564." (Emphasis in original.) *State* v. *Hamilton*, 30 Conn. App. 68, 71–72, 618 A.2d 1372 (1993), aff'd, 228 Conn. 234, 636 A.2d 760 (1994).

The jury has the opportunity to observe the conduct, demeanor and attitude of the witnesses and to gauge their credibility. *State* v. *Stepney*, 191 Conn. 233, 255, 464 A.2d 758 (1983), cert. denied, 465 U.S. 1084, 104 S. Ct. 1455, 79 L. Ed. 2d 772 (1984). Jurors are not expected to lay aside matters of common knowledge or their own observations and experiences, but, rather, to apply them to the facts as presented to arrive at an intelligent and correct conclusion. *State* v. *Cintron*, 39 Conn. App. 110, 119, 665 A.2d 95 (1995).

The defendant claims that the evidence was insufficient to convict him of the crimes charged because it

did not establish his identity as one of the robbers or as the person who had shot the victim. He argues that no facial identification was made and that the remaining alternative means of identification were unreliable and, therefore, insufficient. He also argues that there should have been a lineup with the participants wearing masks to validate the victim's "corporeal" identification, or a "voice-up" to validate the victim's voice identification.

For purposes of admitting any out-of-court identification, the test to be applied is reasonable probability. *State* v. *Johnson*, 162 Conn. 215, 232, 292 A.2d 903 (1972). "Absent constitutional barriers, so long as the witness has identified the defendant with reasonable probability, whether the identification is the result of a photo display, a line-up, a show-up or otherwise, the evidence is admissible." *State* v. *Ledbetter*, 185 Conn. 607, 612, 441 A.2d 595 (1981). The defendant has no constitutional right to a lineup, nor does the state have a constitutional duty to conduct one. *State* v. *Tatum*, 219 Conn. 721, 729, 595 A.2d 322 (1991).

The victim based his identification of the defendant on the defendant's voice, posture and eyes, and on the victim's familiarity with the defendant. Under all of the circumstances, the identification testimony was determined to be reliable and, therefore, admissible. See *State* v. *Hamele*, 188 Conn. 372, 378, 449 A.2d 1020 (1982). We, therefore, do not agree with the defendant that to find that the defendant was one of the robbers, the jury had to resort to speculation and conjecture and to draw unwarranted inferences from the facts presented.

The defendant also claims that even if the evidence was sufficient to establish his identity as one of the robbers, it was not sufficient to establish that he was the one who shot the victim. He argues that, even if the evidence demonstrated that he had a rifle in the

store, that does not necessarily lead to the conclusion that he shot the victim because the other robber could also have had a gun. The defendant's reliance on *State* v. *Mandrell*, 199 Conn. 146, 506 A.2d 100 (1986), is misplaced. The defendant was actually seen to be in possession of the firearm. The second robber was not observed with a firearm at any time during the robbery. In *Mandrell*, the defendant was never seen with the weapon, a bottle, in his possession, and the reasonable possibility that the second perpetrator struck the victim with the bottle was not excluded. In the present case, the jury could reasonably have inferred that it was the defendant, the only person seen to be in possession of a firearm, who fired at the victim. The jury is free to use common sense in considering the evidence introduced. *State* v. *Crump*, 43 Conn. App. 252, 257, 683 A.2d 402 (1996). There was sufficient evidence for the jury to find the necessary element of identity.

II

The defendant next claims that the trial court improperly admitted evidence in two specific instances relating to the critical, contested issue of identification.

The trial court has broad discretion in ruling on the admissibility and relevancy of evidence and will be overturned only upon the showing of a clear abuse of the court's discretion. *State* v. *Kiser*, 43 Conn. App. 339, 361, 683 A.2d 1021 (1996).

" 'Relevant evidence is evidence that has a logical tendency to aid the trier in the determination of an issue. *Pitt* v. *Kent*, 149 Conn. 351, 357, 179 A.2d 626 (1962). One fact is relevant to another if in the common course of events the existence of one, alone or with other facts, renders the existence of the other either more certain or more probable. *State* v. *Blake*, 69 Conn. 64, 76, 36 A. 1019 (1897). . . . Evidence is irrelevant or too remote if there is "such a want of open and visible

connection between the evidentiary and principal facts that, all things considered, the former is not worthy or safe to be admitted in the proof of the latter." *State* v. *Kelly*, 77 Conn. 266, 269, 58 A. 705 (1904). A party is not required to offer such proof of a fact that it excludes all other hypotheses; it is sufficient if the evidence tends to make the existence or nonexistence of any other fact more probable or less probable than it would be without such evidence. *State* v. *Briggs*, [179 Conn. 328, 333, 426 A.2d 298 (1979), cert. denied, 447 U.S. 912, 100 S. Ct. 3000, 64 L. Ed. 2d 862 (1980)] . . . . Evidence is not rendered inadmissible because it is not conclusive. All that is required is that the evidence *tend* to support a relevant fact even to a slight degree, so long as it is not prejudicial or merely cumulative. *State* v. *Miller*, 202 Conn. 463, 482, 522 A.2d 249 (1987); *State* v. *Morrill*, 197 Conn. 507, 548, 498 A.2d 76 (1985).' . . . C. Tait & J. LaPlante, [Connecticut Evidence (2d Ed. 1988)] § 8.1.1, pp. 225–26." (Emphasis in original.) *State* v. *Prioleau*, 235 Conn. 274, 305–306, 664 A.2d 743 (1995).

A

The defendant objected to the introduction into evidence of the photographic array on the basis of relevancy and because its prejudicial effect outweighed its probative value. In the absence of the jury, the trial court conducted a hearing on the defendant's motion to suppress the array, allowing the state, through its offer of proof, to demonstrate relevancy. The trial court denied the motion but indicated that it would rule on its admissibility during the course of the trial.[3] Follow-

[3] In denying the motion to suppress, the court stated: "As I started to rule earlier, I am now going to rule that—I am going to allow the state to pursue this area of its inquiry. However, not to the extent that went in here because a lot of what was said by this witness was permitted for the purpose of allowing the court to understand the general circumstances that prevailed. A lot of it involved hearsay utterance from the victim which the victim can testify himself. But the extent of the testimony of this witness could be to evidence that she took a statement from the victim, that she received a

ing the completion of Sergeant Mary Ann Notarangelo's testimony, and during the victim's testimony, the array, which had been marked for identification purposes only, was allowed to be admitted as a full exhibit by the court. Notarangelo had compiled the photographic array.

The defendant argues that because the victim could identify the defendant as a person he had known for years, there was no reason to allow the photographic array to show that he had a particular person in mind, therefore making it irrelevant, especially because the victim never saw the face of the perpetrator. He argues that there was no legitimate need for this presentation of a "mug shot" and that the admission was harmful.

While it is true that the victim could not see facial features because both individuals wore masks, the purpose of the photographic identification was to establish that it was the defendant, the person known by the victim from the neighborhood and the person he believed to be the one in the mask, who shot him.

The defendant argues that the exhibit was part of a "rogue's gallery" that "undoubtedly left the jury with the impression that the defendant had been arrested before and possibly convicted. The record is clear, however, that the trial court carefully ensured that the exhibit did not furnish an indication of the origin of the six photographs it contained, or an implication that any

description of the perpetrator from the victim and names from the victim without necessarily going into what they are unless defense counsel wishes to do that on cross-examination. And that as a result of that, she prepared a photo array and the victim in fact selected one of the individuals as the person he believed to be the perpetrator and that would be foundation to allow that to be entered as a full exhibit perhaps when other criteria is met when the victim testifies. I think—I'm trying to limit it, but I can't limit it completely. I mean, I'm not trying to say that's all you can ask, just as long as it is within the scope of what I just referred to. Defense may have an exception to the court's ruling."

photograph depicted was from a prior arrest. A juror examining the exhibit would have no reasonable belief, based on its format, that any photograph was derived from a prior arrest. Further, the court carefully instructed the jury as to the purpose and reason for the exhibit as follows: "Now you recall that—before I go any further on with this charge on identification, you may recall that there was placed into evidence a photo array that was prepared by Sergeant Notarangelo and was shown to the victim, Mr. Spain, for the purpose of saying if he could identify from those pictures the person he was describing to the police as one of the two perpetrators, the one who had on the blue mask and he did, in fact, select a photo of the defendant, Mr. Cosby. I think that you should keep that in perspective. The photo array process was not done for the purpose of having Mr. Spain make an identification of the perpetrator because that is the face he saw, but because he had already explained to the police who he believed to be the person wearing the blue ski mask and for the police's information he was shown pictures so he could satisfy the police as to what person it was that he had determined to be the person behind the mask. So the photo wasn't used to identify him, only to give the police the information as to the person who he was identifying as to one of the perpetrators; but this can raise a proper concern with the defendant because there would be reference to the fact that the police had a photo of the defendant and you should understand that the police have many pictures of people. Simply because the police have a person's picture does not mean that he has ever committed a crime before or since, so please understand that there is no connotation of guilt of any kind simply because some picture of the defendant was in the possession of the police. You should not speculate as to how that picture got into their possession or why it was in their possession."

We conclude that the trial court did not improperly admit the evidence on the basis of relevancy. We also conclude that the trial court properly conducted a balancing test weighing the probative value of that exhibit against the prejudicial effect it might have if it was admitted.

B

The defendant next claims that the trial court improperly allowed hearsay evidence to come before the jury. The following additional information is relevant to this claim. On cross-examination of Notarangelo, the following exchange occurred:

"[Defense Counsel:] Okay. But [Spain] didn't identify him because he could see the face of that person at the scene right?

"A. That's correct.

"Q. In other words, he indicated that they both wore masks and he couldn't see their faces?

"A. That is correct.

"Q. Okay. But his identification, you said that was—for whatever reasons he made the identification, it wasn't because he saw their faces at the scene; is that correct?

"A. Not the face per se, but he did comment about—their faces because they were masked; is that fair?

"Q. And that's what he told you?

"A. That's correct."

On redirect examination by the prosecutor, the following exchange occurred:

"[Prosecutor:] Sergeant Notarangelo, on cross-examination you told us that he could not see the faces because of the ski masks. That's what he told you?

"A. That's correct.

"Q. Did he tell you whether or not he could identify anything about the faces themselves in spite of the ski masks?

"[Defense Counsel:] I would object, Your Honor, because it's hearsay and I think since the victim is going to be the next witness that I think we should hear it from him.

"The Court: I think perhaps you might have opened the door, counselor, from the questions that you asked relating to the fact that this witness indicated that he told her that he couldn't see the face. She attempted to explain it a little bit, but it wasn't the question you asked. Rightfully, you restricted her to your question. But I think the state has the right to expand upon it. I'll allow it. You may have an exception."

The state then asked the witness the following questions:

"Q. Sergeant Notarangelo, did he tell you in spite of the masks there was something about that he recognized either of the individuals?

"A. Yes.

"Q. All right. What was that?

"A. The taller individual, the party who he stated shot him, was his eyes?

"Q. He recognized the eyes?

"A. Yes."

During recross-examination of the witness, it was determined that in the victim's written statement, he

did not mention that he had recognized the defendant's eyes. The court thereafter sustained the defendant's objection when the state attempted to question the witness about what the victim had said.

The state concedes, and we agree, that the questioned evidence constituted hearsay. "Hearsay is an out-of-court statement offered into evidence to establish the truth of the matters contained therein." *State* v. *Rinaldi*, 220 Conn. 345, 359, 599 A.2d 1 (1991). The state, however, argues that the defendant "opened the door" by eliciting a hearsay response during its cross-examination and, further, that even if the court should not have admitted this evidence, it was harmless error. We need not determine the harmlessness claim because we conclude that the trial court properly admitted this hearsay testimony because the defendant opened an inquiry into the topic on cross-examination and, thus, allowed inquiry by the state on redirect.

"[A] party who delves into a particular subject during the examination of a witness cannot object if the opposing party later questions the witness on the same subject." *State* v. *Graham*, 200 Conn. 9, 13, 509 A.2d 493 (1986); *State* v. *Aleksiewicz*, 20 Conn. App. 643, 656, 569 A.2d 567 (1990). " 'The party who initiates discussion on the issue is said to have "opened the door" to rebuttal by the opposing party. Even though the rebuttal evidence would ordinarily be inadmissible on other grounds, the court may, in its discretion, allow it where the party initiating inquiry has made unfair use of the evidence.' " *State* v. *Paulino*, 223 Conn. 461, 467, 631 A.2d 720 (1992). This rule allows the state, after the defendant has introduced pieces of evidence for his own advantage, to place the evidence in its proper context. *State* v. *Graham*, supra, 13. After the "door has been opened," the trial court, in the exercise of its discretion, may allow further inquiry into the subject matter, after balancing the harm to the state in restricting the questioning with

the prejudice suffered by the defendant in allowing the rebuttal. *State* v. *Paulino*, supra, 468. We will not overturn the trial court's decision unless the trial court has abused its discretion. *State* v. *Jones*, 205 Conn. 638, 666–67, 534 A.2d 1199 (1982).

Considering the totality of the circumstances, the trial court could reasonably have concluded that the state's inquiry was necessary to place the previously offered testimony about the victim's statements to the witness regarding identification in its proper context. We conclude, therefore, that the court acted within its discretion in admitting the very limited inquiry.

III

The defendant asserts that the trial court improperly instructed the jury on direct and circumstantial evidence. The defendant neither filed a request to charge nor noted an exception to the instructions he now challenges. He seeks review under *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989),[4] or under the plain error doctrine. Practice Book § 4061 (formerly § 4185).[5]

---

[4] Under *Golding*, a defendant can prevail on an unpreserved claim of constitutional error "only if all of the following conditions are met: (1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation clearly exists and clearly deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt." *State* v. *Golding*, supra, 213 Conn. 239–40. The first two conditions are determinations of whether a defendant's claim will be reviewed, and the third condition involves a review of the claim itself. *Wilson* v. *Cohen*, 222 Conn. 591, 603, 610 A.2d 1177 (1992); see also *State* v. *Thurman*, 10 Conn. App. 302, 306, 523 A.2d 891, cert. denied, 204 Conn. 805, 528 A.2d 1152 (1987).

[5] We need not consider a claim on appeal unless it was directly raised at the trial. Practice Book § 4061 (formerly § 4185). "This court reviews rulings solely on the ground on which the party's objection is based." *State* v. *Manning*, 162 Conn. 112, 118, 291 A.2d 750 (1971); *State* v. *Busque*, 31 Conn. App. 120, 127, 623 A.2d 532 (1993), appeal dismissed, 229 Conn. 839, 643 A.2d 1281 (1994).

The defendant's complaint is not that the trial court incorrectly explained the concepts of direct and circumstantial evidence, or that any part of the charge was not according to the law, but rather that the charge was misleading or inadequate.

"The ultimate test of a court's instructions is whether, taken as a whole, they fairly and adequately present the case to a jury in such a way that injustice is not done to either party under the established rules of law." *State* v. *Harden,* 175 Conn. 315, 322, 398 A.2d 1169 (1978). We review the entire charge to determine if it adequately guided the jury to a correct verdict. *State* v. *Pratt,* 235 Conn. 595, 613, 669 A.2d 562 (1995). Viewing the charge as a whole,[6] we conclude that it is not reasonably possible that the jury was misled or that an injustice resulted by virtue of the trial court's charge. The trial court's charge on direct evidence was correct in law, as was the instruction on circumstantial evidence. The defendant has not satisfied the third prong of *Golding* because he has failed to demonstrate that the alleged constitutional violation clearly exists and clearly deprived him of a fair trial.

Plain error review "is reserved for truly extraordinary situations where the existence of the error is so obvious that it affects the fairness and integrity of and public confidence in the judicial proceedings. *State* v. *King,* 216 Conn. 585, 591, 583 A.2d 896 (1990)." (Internal quotation marks omitted.) *State* v. *Sawyer,* 32 Conn. App. 854, 856–57, 632 A.2d 372, cert. denied, 228 Conn. 911, 635 A.2d 1230 (1993). The claimed error here is not so egregious or obvious as to merit such review. The instructions read as a whole did not result in an "unreliable verdict or miscarriage of justice. . . ." (Citations omitted; internal quotation marks omitted.) *State* v.

[6] We see no practical purpose in setting forth the applicable portions of the trial court's instruction on direct and circumstantial evidence.

*Harvey,* 27 Conn. App. 171, 187, 605 A.2d 563, cert. denied, 222 Conn. 907, 608 A.2d 693 (1992). Plain error review is not warranted.

The judgment is affirmed.

In this opinion the other judges concurred.