## STATE OF CONNECTICUT *v.* LEONARD TALTON
## (AC 20160)

Schaller, Dranginis and Dupont, Js.

Argued April 4—officially released June 19, 2001

*Richard E. Condon, Jr.*, special deputy assistant public defender, for the appellant (defendant).

*Eileen McCarthy Geel*, assistant state's attorney, with whom were *James G. Clark*, senior assistant state's attorney, and, on the brief, *Michael Dearington*, state's attorney, and *Roger Dobris*, senior assistant state's attorney, for the appellee (state).

*Opinion*

SCHALLER, J. The defendant, Leonard Talton, appeals from the judgment of conviction, rendered after a jury trial, of murder in violation General Statutes § 53a-54a,[1] conspiracy to commit murder in violation of General Statutes §§ 53a-54a and 53a-48 (a),[2] criminal possession of a firearm in violation of General Statutes § 53a-217 (a)[3] and carrying a pistol without a permit in violation of General Statutes (Rev. to 1997) § 29-35.[4] On appeal, the defendant claims that the trial court

[1] General Statutes § 53a-54a (a) provides in relevant part: "A person is guilty of murder when, with intent to cause the death of another person, he causes the death of such person . . . ."

[2] General Statutes § 53a-48 (a) provides: "A person is guilty of conspiracy when, with intent that conduct constituting a crime be performed, he agrees with one or more persons to engage in or cause the performance of such conduct, and any one of them commits an overt act in pursuance of such conspiracy."

[3] General Statutes § 53a-217 (a) provides in relevant part: "A person is guilty of criminal possession of a firearm . . . when such person possesses a firearm . . . and (1) has been convicted of a felony . . . ."

[4] General Statutes (Rev. to 1997) § 29-35 (a) provides in relevant part: "No person shall carry any pistol or revolver upon his person, except when such person is within his dwelling house or place of business, without a permit to carry the same issued as provided in section 29-28. . . ."

improperly (1) admitted testimony that the victim, the defendant's brother and the state's key witness were gang members in the business of selling drugs, (2) admitted testimony of the state's key witness that since the victim's death, the witness' brother had been shot and killed, and that the person who killed the brother also had been shot and killed, and (3) allowed uniformed correction officers to be present during jury selection, thereby violating the defendant's right to a fair trial. We affirm the judgment of the trial court.

The jury reasonably could have found the following facts. On March 22, 1997, at approximately 8:30 p.m., a shooting occurred at the Quinnipiac Terrace Housing Complex (housing complex) in New Haven. As a result, the victim, Tyrone Belton, died after receiving a single gunshot wound to the chest. A friend of the victim, Tacumah Grear, witnessed the shooting and the events that had led to the shooting.

The shooting arose from a dispute involving a motorbike that had occurred on the day before the shooting. On the morning of March 21, 1997, the victim and Grear were taking turns riding the victim's motorbike at the housing complex. While the victim was passing the motorbike to Grear, Richard Snowden, the defendant's brother, approached them and asked if he could also ride the motorbike. The victim responded in the negative. Nevertheless, Snowden took the motorbike and rode off on it. When Snowden returned with the motorbike, the victim punched Snowden in the face, knocking him unconscious. Snowden subsequently reported the incident to his friend, Sean Bethea. Later that day, Bethea confronted the victim about the incident and the two engaged in a fistfight. After the fight, the parties discussed the matter, and the victim was under the impression that they had resolved the dispute involving the motorbike.

The victim's impression, however, would prove to be wrong. On the following evening, the victim and Grear were standing in a parking lot located in the housing complex. While waiting there, two men approached them; one was wearing a camouflage mask, and the other was wearing a hood pulled tightly over his head. Despite their disguises, Grear recognized the two men as the defendant and Snowden because he had known both of them before the night in question.[5] One of the assailants told Grear to leave so that he could "handle [his] business." Grear understood that to mean that the assailants wanted to shoot the victim. Grear stepped between the assailants and the victim, and told them that he would not leave. A struggle ensued during which the hooded man, the defendant, brandished a gun and prepared to fire it. The victim saw the gun and, in response, pushed Grear to the ground to prevent him from being shot. After falling to the ground, Grear saw the hooded man point the gun at the victim and fire it. The victim fell to the ground, and the assailants fled the scene.

Thereafter, the police arrived. They questioned Grear on that night, but he chose not to identify the assailants. A few days later, however, Grear had a change of heart and informed the police that he could identify the assailants. The police met with Grear and tape-recorded his statement, in which he identified the defendant as the shooter and Snowden as the accomplice. At trial, Grear was the state's principal witness. The jury found the defendant guilty as charged. This appeal followed. Additional facts will be set forth as they become relevant to the defendant's claims.

I

The defendant first claims that the court improperly admitted testimony that the victim, Snowden and Grear

[5] Grear had attended school with Snowden since middle school. Through Snowden, Grear also became acquainted with Snowden's brother, the defendant.

were gang members in the business of selling drugs. Specifically, he claims that the court improperly admitted such testimony because it was irrelevant and prejudicial. We disagree.

The following additional facts pertain to the defendant's claim. Grear testified at trial about the events that gave rise to the shooting and the shooting itself. Grear's testimony was, for the most part, consistent with the statement that he had given to the police a few days after the shooting, with one exception. Contrary to his statement to the police, Grear testified at trial that he was unable to identify the assailants because one was wearing a mask and the second was wearing a hood. Grear, at trial, therefore refused to identify the defendant as the shooter. Pursuant to *State* v. *Whelan*, 200 Conn. 743, 513 A.2d 86, cert. denied, 479 U.S. 994, 107 S. Ct. 597, 93 L. Ed. 2d 598 (1986), the state introduced for substantive purposes the prior inconsistent statement that Grear had made to the police.

To rehabilitate Grear's credibility and to explain his prior inconsistent statement, the state asked Grear why he was reluctant to testify as to the identity of the shooter. Grear responded that he feared retaliation against himself or his family because, along with the victim and Snowden, he was in "the game," implying that the three of them were members of a gang in the business of selling drugs. The court overruled the defendant's objection to such testimony, which objection was based on the grounds of relevance and prejudice.

Before addressing the merits of the defendant's claim, we note the proper standard of review applicable to a court's ruling on evidentiary matters. "Our standard of review for evidentiary matters allows the trial court great leeway in deciding the admissibility of evidence. The trial court has wide discretion in its rulings on evidence and its rulings will be reversed only if the

court has abused its discretion or an injustice appears to have been done. . . . The exercise of such discretion is not to be disturbed unless it has been abused or the error is clear and involves a misconception of the law." (Internal quotation marks omitted.) *Bunting* v. *Bunting*, 60 Conn. App. 665, 670, 760 A.2d 989 (2000).

## A

The defendant initially claims that the court improperly admitted testimony that the victim, Snowden and Grear were gang members in the business of selling drugs because such testimony was irrelevant. We are unpersuaded.

"Evidence is admissible only if it is relevant. *Tomlinson* v. *Board of Education*, 226 Conn. 704, 728, 629 A.2d 333 (1993). Relevant evidence is evidence that has a logical tendency to aid the trier in the determination of an issue. . . . One fact is relevant to another if in the common course of events the existence of one, alone or with other facts, renders the existence of the other either more certain or more probable. . . . *State* v. *Cosby*, 44 Conn. App. 26, 31, 687 A.2d 895 (1996), cert. denied, 240 Conn. 910, 689 A.2d 474 (1997). It is well settled that questions of relevance are committed to the sound discretion of the trial court. *State* v. *Weidenhof*, 205 Conn. 262, 277, 533 A.2d 545 (1987). *State* v. *Lyons*, 43 Conn. App. 704, 707, 686 A.2d 128 (1996), cert. denied, 240 Conn. 906, 688 A.2d 335 (1997)." (Internal quotation marks omitted.) *First Federal Bank, FSB* v. *Gallup*, 51 Conn. App. 39, 41–42, 719 A.2d 923 (1998). With those principles in mind, we must determine whether the testimony concerning the potential threat from gang activity was relevant to explaining Grear's prior inconsistent statement.

"The general rule is that threats against witnesses are not relevant and are thus inadmissible as evidence unless the defendant is linked in some way to the mak-

ing of the threats." *State* v. *Walker*, 214 Conn. 122, 129, 571 A.2d 686 (1990). "An exception to the general rule concerning the admissibility of evidence of threats exists, however, where the evidence of threats is offered not to prove the guilt of the accused but rather to explain a witness' prior inconsistent statement." Id.

In the present case, we cannot conclude that the court abused its discretion in determining that the testimony regarding the gang activity was relevant to the issue of credibility. The record reveals that the state offered the testimony solely for the purpose of explaining Grear's prior inconsistent statement. As such, the testimony came within the purview of the exception to the general rule. We conclude, therefore, that the court properly admitted the testimony regarding the gang activity.

B

Despite the relevancy of the challenged testimony, the defendant also argues that the court nevertheless should have excluded it as being unduly prejudicial. We disagree.

"Although relevant, evidence may be excluded by the trial court if the court determines that the prejudicial effect of the evidence outweighs its probative value. . . . Of course, [a]ll adverse evidence is damaging to one's case, but it is inadmissible only if it creates undue prejudice so that it threatens an injustice were it to be admitted. . . . The test for determining whether evidence is unduly prejudicial is not whether it is damaging to the defendant but whether it will improperly arouse the emotions of the jury. . . . The trial court . . . must determine whether the adverse impact of the challenged evidence outweighs its probative value. . . . Finally, [t]he trial court's discretionary determination that the probative value of evidence is not outweighed by its prejudicial effect will not be disturbed on appeal unless a clear abuse of discretion is shown. . . .

[B]ecause of the difficulties inherent in this balancing process . . . every reasonable presumption should be given in favor of the trial court's ruling. . . . Reversal is required only where an abuse of discretion is manifest or where injustice appears to have been done." (Internal quotation marks omitted.) *State* v. *Wargo*, 255 Conn. 113, 141–42, 763 A.2d 1 (2000).

Under the circumstances of this case, the court did not abuse its discretion in concluding that the probative value of Grear's testimony concerning the gang activity outweighed any prejudicial effect that it may have had. As we have indicated, the state offered the testimony solely for the purpose of explaining Grear's prior inconsistent statement. We also note that nowhere in his testimony did Grear indicate that the defendant had engaged in gang activity. Rather, Grear indicated only that he and the victim and Snowden had been involved in gang activity. In light of that limitation, we cannot see how Grear's testimony had a prejudicial effect on the defendant. Accordingly, the court properly admitted the testimony regarding the gang activity.

## II

The defendant next claims that the court improperly admitted Grear's testimony that since the victim's death, Grear's brother had been shot and killed, and that the person who killed his brother also had been shot and killed. As with his first claim, the defendant supports it with a two-pronged argument. He argues that such testimony was irrelevant and prejudicial. We are not persuaded.

The following additional facts are necessary for our resolution of the defendant's claim. After the court admitted Grear's prior inconsistent statement into evidence, the state asked Grear about his brother's death. Grear testified that since the victim died, Grear's brother had been shot and killed, and that the person

who killed his brother also had been shot and killed. The defendant objected to such testimony on the basis of relevance and prejudicial effect. The state, in response, argued that it was merely attempting to rehabilitate Grear's credibility by explaining his prior inconsistent statement. According to the state, the testimony was an additional reason as to why Grear was fearful of testifying. The court agreed with the state and admitted the testimony into evidence. In doing so, however, the court issued a limiting instruction to the jury in which it specifically emphasized that the state was in no way claiming that the defendant had a part in the aforementioned deaths.[6]

## A

The defendant first claims that the court improperly admitted Grear's testimony regarding the death of his brother because such testimony was irrelevant. We disagree.

Because the defendant's claim is substantially similar to his first claim, we need not embark on the same detailed discussion of the law. See part I A. We reiterate, however, that appellate review of a court's determination regarding evidentiary matters is conducted under an abuse of discretion standard. *Bunting* v. *Bunting*, supra, 60 Conn. App. 670. We also reiterate that, although not generally relevant, evidence of threats is relevant "where the evidence . . . is offered not to prove the guilt of the accused but rather to explain a witness' prior inconsistent statement." *State* v. *Walker*, supra, 214 Conn. 129. As was the case with the defendant's first claim, the state offered the testimony solely

[6] The limiting instruction concerning Grear's testimony was as follows: "Now, ladies and gentlemen, it is not the position or claim of the state that the shooting of this witness' brother or the person who shot his brother, that this defendant or anybody connected with him or his family had anything to do with those shootings. That is not the state's claim."

for the purpose of explaining Grear's prior inconsistent statement. The court therefore did not abuse its discretion in admitting as relevant the testimony regarding the death of Grear's brother.

B

The defendant also claims that, notwithstanding the relevancy of the challenged testimony, the court should have excluded it as being unfairly prejudicial. We are unpersuaded.

Once again, a thorough discussion of the law is not warranted as the defendant's claim is substantially similar to his first claim. See part I B. We nonetheless restate that "[t]he trial court's discretionary determination that the probative value of evidence is not outweighed by its prejudicial effect will not be disturbed on appeal unless a clear abuse of discretion is shown." (Internal quotation marks omitted.) *State* v. *Wargo*, supra, 255 Conn. 141.

After reviewing the record, we conclude that the court did not abuse its discretion in determining that the probative value of Grear's testimony regarding the death of his brother outweighed any prejudicial effect that it may have had. The state used the testimony solely for the purpose of explaining Grear's prior inconsistent statement. Furthermore, the court issued a limiting instruction to the jury with respect to the challenged testimony. "Unless there is a clear indication to the contrary, a jury is presumed to follow the court's instructions." (Internal quotation marks omitted.) *State* v. *Coughlin*, 61 Conn. App. 90, 96, 762 A.2d 1 (2000), cert. denied, 255 Conn. 934, 767 A.2d 105 (2001). We conclude, therefore, that the court did not abuse its discretion in admitting as more probative than prejudicial the testimony regarding the deaths of Grear's brother and the brother's killer.

## III

Finally, the defendant claims that the court improperly allowed uniformed correction officers to be present during jury selection, thereby violating his right to a fair trial. We decline to address the merits of the defendant's claim.

The record reveals that two or three uniformed correction officers were present during jury selection. It does not, however, reveal the correction officers' proximity to the defendant. Furthermore, the record is devoid of any detail with regard to the correction officers' behavior. As such, we cannot discern whether a colorable claim exists. "It is up to the appellant to provide a record adequate to review his claims. Practice Book § 61-10." *Rosenblit* v. *Williams*, 57 Conn. App. 788, 796, 750 A.2d 1131, cert. denied, 254 Conn. 906, 755 A.2d 882 (2000). "Our role is not to guess at possibilities, but to review claims based on a complete factual record developed by a trial court. . . . Without the necessary factual and legal conclusions furnished by the trial court . . . any decision made by us respecting [the defendant's claims] would be entirely speculative." (Internal quotation marks omitted.) *State* v. *Lewis*, 60 Conn. App. 219, 251, 759 A.2d 518, cert. denied, 255 Conn. 906, 762 A.2d 911 (2000). In light of the inadequate record, we decline to review the defendant's claim.

The judgment is affirmed.

In this opinion the other judges concurred.